## 1547.  CASWELL v. THE STATE.

1. A trial judge may properly ask questions for the purpose of informing himself as to the truth of any matter material to a cause on trial, provided, in asking the questions, no intimation of his opinion upon the merits is conveyed to the jury, and especially if the complaining party is not injured by the questions asked.

2. Assignments of error, contained in a petition for certiorari, will not be considered except in so far as they may be verified in the answer.

3. A trial judge must necessarily be allowed great latitude in the exercise of his discretion as to opening a case at any stage, or as to the introduction of additional testimony, as well as in permitting leading questions to be asked; and this discretion will not be controlled, unless it clearly appears that the judge abused his discretion, to the prejudice of the complainant.

4. Mere hearsay, unless a witness is testifying as an expert, has no more probative value as a basis of opinion than ordinarily attaches to hearsay.

5. The judge of the superior court erred in overruling the certiorari; because the verdict was without evidence to support it, in that the ownership of the mule (with reference to which the false representations were alleged to have made by the defendant) was not proved as alleged, though such ownership was made material by its averment; nor does the proof show that the trade by which the prosecutors are alleged to have been defrauded was such a bargain as that described in the indictment. As to these points there is a fatal variance between the allegations and the proof; and furthermore, there is no evidence whatever that the prosecutors in fact sustained any loss. Allegations made material by their averment must be proved as alleged, in order that the defendant may be protected from again being placed in jeopardy for the same transaction.

6. Upon the hearing of a certiorari the superior court can not consider any evidence other than that which was adduced upon the trial in the tribunal whose judgment is under review. Newly discovered evidence can not be considered upon the hearing of a certiorari. It is suggested that legislation be had which will permit the consideration of newly discovered evidence, upon the hearing of a certiorari from the judgment of a court which is by law inhibited from granting new trials.

Certiorari, from Baldwin superior court—Judge Lewis. November 5, 1908.

Argued January 14,—Decided January 27, 1909.

W. F. Jenkins & Son, A. S. Thurman, for plaintiff in error.

J. E. Pottle, solicitor-general, S. T. Wingfield, contra.

RUSSELL, J. Caswell was indicted jointly with one Paul for the offense of misdemeanor. The indictment charged that Caswell and Paul "did falsely and fraudulently, and with intent to defraud Reid & Company, . . . represent to the said . . Reid & Company that a certain bay mare mule about nine years old, which was then and there the property of said W. H. Paul, was a sound mule, entirely able to perform the labor of farm work, and without any defect whatever, and did, on the faith of such false representations, induce the said Reid & Company to accept said mule in a mule trade at the valuation of $140, and to deliver to said Caswell and Paul a mule worth $200, whereas, in truth and in fact, as the said Caswell and Paul then and there well knew, the said mule was affected with a disease unknown to said Reid & Company, and which could not be known to them by the exercise of care and diligence, and was entirely worthless, whereby loss accrued to said Reid & Company, in the sum of $140."

The defendants were tried jointly, and Paul was acquitted

Caswell was found guilty, and sued out a writ of certiorari. He excepts to the judgment overruling his certiorari, and also to the refusal of the judge of the superior court to consider certain affidavits offered at the hearing had upon the certiorari. The conviction is assigned as error, as being contrary to law, contrary to the evidence, and without evidence to support it. Exception is also taken to certain rulings of the judge of the county court in admitting evidence during the trial, to various portions of his charge, and to his interrogating one of the witnesses in behalf of the State. We shall consider in reverse order the points raised by the certiorari.

1. While A. S. Reid, a witness for the State, was upon the stand, and after he had testified that the mule in question was a "choker," the trial judge asked the witness the following questions: "Captain, is it possible for a person to tell that an animal was what you have described as a 'choker' by outside appearances, that is, by simply looking at him?" The witness answered, "No, sir." Then the judge asked, "Is it possible for a person to own such an animal and not himself know that the animal is so afflicted?" To which the witness replied, "No, sir." We have several times ruled that it is perfectly proper for the trial judge to ask questions for the purpose of informing himself as to the truth of any matters material to the case, provided that in asking the questions he does not convey to the jury any intimation of his opinion upon the merits, or impress the jury that he had a fixed opinion, and provided that the complaining party is not injured or his rights prejudiced by the question asked. We are not prepared to say whether the complaint of the plaintiff in error, that the manner of the trial judge was such as to convince the jury that he believed the defendant to be guilty, is or is not well taken. It is as yet impossible for the tone and manner of a presiding judge to be transmitted to a court of review. Counsel for the plaintiff in error himself acquits the trial judge of any intention or desire to influence the jury; so we must consider the questions asked by the judge as having been propounded in a tone and manner which would convey no other impression to the jury than that the court sought proper information. The indictment alleged that the prosecutors could not tell, by the use of ordinary diligence, that the mule was diseased. It was necessary to prove this allegation; .

and therefore it was proper for the court to ask whether a "choker" could be distinguished, by mere inspection, from a sound mule. Nor does the second question asked by the trial judge appear to be error.

2. Several of the exceptions to the charge are not sufficiently verified by the answer of the judge of the county court to be considered, and the exceptions in which the complaint is properly presented that the contention of the State was too strongly stressed, and more fully stated than the contention of the defendant, is without merit.

3, 4. The complaint that certain evidence admitted by the court over objection was not in rebuttal of anything that had been brought out upon cross-examination, and furthermore that this evidence was elicited by a leading question, is not sufficiently meritorious to have required that the certiorari be sustained and a new trial granted. A trial judge must necessarily be allowed great latitude in the exercise of his discretion in reference to reopening the opportunity for the introduction of additional testimony at any stage of the case, as well as in permitting leading questions to be asked. This discretion will not in any case be controlled, unless abused, to the manifest prejudice of the complainant; and this must be shown beyond peradventure.

The trial judge, however, erred in overruling the motion of the defendant's counsel to rule out the evidence which placed the ownership of the mule, as alleged in the indictment, in W. H. Paul. The only evidence introduced by the State to this effect was opinionative, and based upon hearsay, and these objections, being urged, should have been sustained, and this testimony excluded from the jury. The value of opinionative evidence, when based upon substantive facts within the personal knowledge of the witness, is for the jury, but mere hearsay, unless the witness testifies as an expert upon some subject which is a matter of scientific or special knowledge, has no more probative value, when used as the foundation upon which to base an opinion, than ordinarily attaches to it.

5. We think the judge of the superior court erred in overruling the certiorari, for the reason that the verdict of guilty was without evidence to support it. A plea of not guilty puts in issue every allegation in the accusation which is material to the offense charged.

Allegations not necessary may be made material by their averment. But whether intrinsically material, or rendered material by the particularity of statement employed in making the charge, the burden devolves upon the State not only to prove those allegations necessary to show the defendant's guilt of the nominal charge preferred against him, but also to go further and prove that the crime was committed (in the particular instance identified by the accusation) "in the manner and form alleged," in order that the defendant may be protected from being again placed in jeopardy for the *same transaction*. The trial judge, in his answer, states that he did not consider the allegation that the mule was the property of W. H. Paul as being of any importance, and that, in summing up the facts necessary to be proved by the State, he did not refer to the question of ownership. The judge of the superior court apparently entertained the same view as the judge of the county court. It may be that it was not essential in this case (in order to identify the mule in question) to allege its ownership at all, but when the ownership of the mule, by the misrepresentation of which the defendant was alleged to have defrauded the prosecutors, was laid in W. H. Paul, the averment immediately became material, and proof that the mule was really the property of one Richter, instead of Paul, raised a fatal variance between the allegations and the proof. Nothing is better settled than that upon a plea of former jeopardy the issue is determined from the allegations of the accusation or indictment upon which the defendant has previously been tried. The former indictment is part of the plea, and must be exhibited as such. In case, then, that the defendant Caswell should hereafter be indicted for making false representations as to a mule belonging to Richter (though he has already been convicted for that), the indictment upon which he was tried being for misrepresenting a mule belonging to one Paul, the court would be required, upon a proper showing, to strike the plea of former jeopardy, and thus the defendant could a second time be tried for misrepresenting Richter's mule.

The verdict is also entirely unsupported upon another point. The accusation alleges that the prosecutors were defrauded in the sum of $140. The evidence fails to show how they were defrauded, or that they were defrauded in any amount. Of course, if the evidence showed that they were defrauded in the sum of one dollar

or any other amount, it would have been sufficient. Several witnesses swore that the mule bartered to the prosecutors was wholly worthless, and some witnesses testified that the defendant said she was a good, sound mule, but this does not prove that the prosecutors were defrauded, nor does any witness for the prosecution testify more than that the mule which the prosecutor got from Caswell was worthless.

The transaction which was the basis of the prosecution was a double-barrelled proceeding. The prosecutors got two mules— as to one of which they made no complaint—and $200 in good money, in exchange for the two mules they let the defendant have. There is no evidence that either of the mules the prosecutors let the defendant have was worth $200, or that the mule which the defendant let them have, of which no complaint was made, was not relatively as good a mule as one or the other of the two mules they let him have. There is no evidence that, even if the mule denominated a "choker" was absolutely worthless, as testified to, the mule which the prosecutors received, together with the $200 which the defendant paid them, was not a full equivalent, a quid pro quo, for the two mules which they delivered to him. So far as we can see from the record, there is no evidence that the prosecutors really lost anything, though they may have expected to make more than they actually realized. We do not mean to say that they did not suffer loss, but we do mean to say that it was the duty of the State to show this fact, and that it was not proved. If the prosecutors actually suffered loss, the evidence must establish not only that the mule which was the chief subject of controversy in the former trial was worthless, but also what was the value of the other mule received by the prosecutors, and also the value of the two mules which the defendant received in exchange. When these facts are shown by the evidence, the jury can determine, by adding the value of the sound mule which the prosecutors received from the defendant to the $200, and comparing the sum thus reached with the value of the two mules which the defendant received, whether there was any loss, and who was the loser. The accusation alleges that, by Caswell's representations, the prosecutors were induced to accept the worthless mule at a valuation of $140; and to deliver to him a mule worth $200, but the evidence is silent upon this subject. Indeed it tends rather to show a lump-

ing trade than that either of the two mules swapped by the defendant to the prosecutors was put up against either of the mules which they got in exchange. Mr. Stubbs, who made the trade for the prosecutors, testified: "I told him that I would trade him two mules that I pointed out to him for his two and $200." So much liberty, if not license, is customary in "horse swaps" that, except in a very plain case, the law is loath to interfere and lay its heavy hand on either participant.

6. The judge of the superior court properly refused to consider affidavits attempting to set up newly discovered evidence in support of the certiorari and of the grant of a new trial thereunder. Newly discovered evidence can not be considered on the hearing of a certiorari. *Almand* v. *Maxwell,* 100 *Ga.* 318 (27 S. E. 176); *Laffitte* v. *State,* 105 *Ga.* 595 (31 S. E. 540). Counsel for the plaintiff in error make no complaint of this ruling, stating that the only reason for the presentation of the affidavits was as inducement or additional reason why a new trial should have been granted. The court below, just as is this court, is bound by the law, and should not be influenced in the slightest degree by anything not sanctioned by the law. It is, however, certainly an anomaly, and a lame place in our law, that a party may have evidence which no diligence would sooner have obtained and which will demonstrate that a verdict against him was wholly and radically wrong, and yet the court be powerless to consider it. The rule has grown out of the adjudged similarity between certioraries and bills of exceptions, without taking into consideration the fact that the court from which the writ of error may be brought can itself grant a new trial upon extraordinary grounds. In most cases certioraries are brought, as in the present instance, from courts which are not authorized to grant a new trial. This difference marks a broad distinction between certioraries and bills of exceptions; and it appears to us that it would be in the interest of justice that legislation be had which would permit the consideration of newly discovered evidence, in proper cases, upon the hearing of certioraries sued out from judgments of those courts which are by law inhibited from granting new trials.

For the reason that the verdict was without evidence to support it, we think the judge of the superior court erred in overruling the certiorari; and the judgment is                    *Reversed.*