## 2617. MIXON *v.* THE STATE.

1. Though, by reason of verbal inaccuracies, an indictment may be in part unintelligible, yet where, either by disregarding the unintelligible portion as surplusage, or by considering it along with the rest of what is said, the language of the indictment plainly, clearly, definitely, and accurately charges a particular offense, it is not subject to be quashed on demurrer.
2. Under the evidence the jury were fully authorized to find the defendant guilty of voluntary manslaughter.
3. Though it is the best practice for a trial judge, in charging the jury upon the subject of the defendant's statement, to follow the language of the statute on that subject literally, yet it is not reversible error for him to fail to do so if in fact the instruction given substantially covers the material elements of the statute and is otherwise fair to the defendant.
4. Wherever a homicide is neither justifiable nor malicious, it is manslaughter; and, if intentional, is voluntary manslaughter.
5. Neither the parol-evidence rule nor any rule forbidding oral testimony as to the contents of court records renders a witness incompetent to testify as to a dying declaration, though the words of the dead man may have been taken down in writing by some one present at the time the alleged statement was made.
6. Slight or immaterial error in the admission or exclusion of testimony will not work a reversal of the judgment of the lower court refusing a new trial.
7. It is not necessarily reversible error for a trial judge to refuse to give the exact language of a written request to charge, if he substantially covers the same matter in his general charge.
8. The alleged newly discovered evidence was not sufficient to require a new trial.
9. It is not unconditionally erroneous for a judge to instruct the jury that provocation by words, threats, menaces, and contemptuous gestures can in no case be sufficient to free the person killing from the guilt and crime of murder. Whether such a charge is erroneous or not depends on the facts of the case, and on what else is said in the charge on the same subject.

Conviction of manslaughter; from Johnson superior court—Judge Rawlings. December 15, 1909.

Argued May 17,—Decided June 14, 1910.

*James K. Hines, E. L. Stephens,* for plaintiff in error.

*Alfred Herrington,* solicitor-general, *W. W. Larsen, William Faircloth,* contra.

POWELL, J.   1.   The indictment charged the defendant with the offense of murder, "for that the said George W. Mixon, on the 13th day of March, in the year of our Lord 1909, in the county aforesaid, with force and arms one pistol in the peace of God and said State then and there being, then and there unlawfully, feloniously, wilfully, and of his malice aforethought, did kill and murder, by shooting the said Henry Claxton with a certain pistol which the said George W. Mixon then and there held, and giving to the said Henry Claxton then and there a mortal wound, of which wound the said Henry Claxton died.   And so the jurors aforesaid, upon their oath aforesaid, do say that the said George W. Mixon him, the said Henry Claxton, in manner and form aforesaid, unlawfully, feloniously, wilfully, and of his malice aforethought, did kill and murder, contrary to the laws of said State, the good order, peace, and dignity thereof."   The defendant demurred to the indictment, on the general grounds and on several special grounds, the substance of the objections being that the indictment charged the killing and murdering of a pistol, and not of a human being.   There is a manifest verbal inaccuracy in the indictment, but it requires no straining of the ordinary rules of construction to hold that the language, taken altogether, clearly, definitely, and accurately conveys no other meaning than that George W. Mixon killed and murdered Henry Claxton, by shooting him with a pistol.   This intelligent meaning can be gained from the language used; and the language is not subject to any other intelligent construction.   The indictment is therefore held to be sufficient against the demurrer. Verbal absurdities will not render an indictment or other pleadings subject to demurrer, where the language, taken as a whole, nevertheless clearly, accurately, and definitely charges a crime.   The maxim utile per inutile non vitiatur (Broom's Legal Maxims (7th ed.) 468) is applicable to indictments as well as to other pleadings.

2.   The indictment charged murder.   The defendant was convicted of voluntary manslaughter.   The evidence—probably the preponderance of the evidence—authorized this verdict.

3.   Complaint is made as to an instruction of the court on the subject of the defendant's statement to the jury.   The charge of the court did not follow the language of the statute, but did. inform the jury, in substance, as to the same things mentioned in the statute.   The Supreme Court and this court have time and again

suggested to the trial bench that in charging upon the defendant's statement the better practice is to follow the language of the statute literally, but it is not held to be reversible error for the judge to fail to do so, where he nevertheless covers the same ground in his charge. The language of the trial judge in the present case is not as perspicuous as the language of the statute itself (indeed, it is hard to improve upon the statute itself for the quality of being luminous), but we do not think that the instruction complained of was materially misleading to the jury.

4. Complaint is made that the court erred in charging the jury as follows: "So in this case, if you find from the facts and circumstances of the case that the accused took the life of the deceased, and find at the time he was not justified, that the killing was done in a sudden heat of passion, generated and caused, so far as the deceased is concerned, by an endeavor on the part of the deceased to commit a serious personal injury upon his person, or other equivalent circumstances to justify the excitement of passion and exclude all idea of deliberation or malice, either express or implied, and the provocation was not by words, threats, menaces, and contemptuous gestures, but amounted to more, and you find that the killing occurred under·such circumstances, and believe that to be the truth of it, then you would be authorized to find the defendant guilty of voluntary manslaughter." ˙ This charge is not subject to the exceptions made against it. It is not an incorrect statement of the law. Taken in˙connection with the remainder of the charge, it is not misleading, nor was it likely to confuse the jury or to deprive the defendant of the defense of reasonable fear. It was not calculated to impress upon the jury that provocation by words, threats, menaces and contemptuous gestures could in no case be sufficient to generate a reasonable fear in the mind of the defendant. While it might have been more emphatic for the judge to have qualified the expression, "serious personal injury," by adding parenthetically, "not amounting to a felony," yet as the judge had prefaced this instruction with the qualification that it was applicable only in the event that they should find that the defendant was not justifiable, and as he had explained to them fully the circumstances under which the defendant would have been justifiable, the instruction was not inaccurate. There are other exceptions to the judge's charge on the subject of man-

slaughter, all of them based on grounds similar to those mentioned above, but, considering the charge as a whole, there was no material inaccuracy.

5. A witness for the State detailed dying declaration made by the deceased. On cross-examination he admitted that some one present at the time the statement was made probably took down the statement in writing; though he was unwilling to swear positively that the statement was committed to writing. However, it is fairly inferable from what the witness testified that some one present made a memorandum of what the deceased stated. The court overruled a motion to exclude this testimony, on the ground that the writing would be the best evidence of what the statement was. There was no merit in this objection. It was competent for the witness to testify as to his recollection of what the dying man said, notwithstanding some one else present might have undertaken to commit the statement to writing. Neither the parol-evidence rule, nor the rule which forbids oral testimony as to the contents of public records without accounting for the original, applies in such a case.

6. There was some testimony on behalf of the defendant to the effect that the deceased had cursed him; and thereafter certain witnesses for the State were allowed to testify that the deceased was not a "cursing man," that he was a member of the church, that those who knew him well had never heard him curse. The exception to this ruling may be disposed of by the statement that even if the ruling were erroneous, the error was of too little materiality to require a reversal.

7. The defendant requested the court to charge the jury as follows: "Defendant will be justified if there be a reasonable doubt as to whether he acted under such fears, or had reason to feel that it was necessary to kill in order to save his own life, or to prevent a felony from being committed upon his person." Perhaps this request to charge is subject to the criticism that it is not theoretically accurate. A defendant would not necessarily be justified because the jury might have reasonable doubts as to whether he acted under the fears of a reasonable man; though if the jury have a reasonable doubt as to whether he had such fears as would have justified him, it is the fears that justify, and not the doubt, and they ought to acquit. But if this criticism be hypercritical, it is

enough, to dispose of the exception, to say that the judge in his general charge fully covered the question as to reasonable doubt and as to reasonable fears. Indeed, at the conclusion of the charge, he gave in substance the exact principle requested, and gave it in almost the exact language requested. Therefore, the refusal to give the special request was not reversible error. *Smith* v. *State*, 63 *Ga.* 168; *Carr* v. *State*, 84 *Ga.* 250 (4), 255 (10 S. E. 626); *McDuffie* v. *State*, 90 *Ga.* 786 (17 S. E. 105); *Perdue* v. *State*, 126 *Ga.* 112 (54 S. E. 820). It is true that in *Mitchell* v. *State*, 71 *Ga.* 128 (7), 157 (relied on by plaintiff in error), a ruling apparently to the contrary was made. However, the decision in the *Mitchell* case was by two judges only, and, as to this point, is in conflict with both prior and subsequent decisions of the Supreme Court.

8. The motion for a new trial contains several grounds based on alleged newly discovered testimony. One ground set up the fact that the dying declaration referred to above was in fact committed to writing, and that the witness who testified on the subject knew, as a matter of fact, that the writing was then in the court-room, in the possession of one of the witnesses. What has been said already on this subject seems to dispose of this ground. Even if the writing had been in existence, it would not have been the highest evidence of what the dying man had said, though it might, in a sense, have been the most reliable evidence (see *Perry* v. *State*, 102 *Ga.* 365, 374 (30 S. E. 903)); so, for all practical purposes, the testimony of this alleged newly discovered witness would merely tend to impeach the testimony of the witness who expressed some doubt as to whether the statement had been committed to writing. There was further presented the alleged newly discovered testimony of an eleven-year-old boy who claimed to have been a witness to the transaction. As the affidavit of this witness tended to show a case of voluntary manslaughter, and as the defendant was convicted of that offense, it would hardly afford a reason for granting a new trial, even if it were otherwise sufficient to bring about such a result. There was alleged newly discovered testimony of still another witness, but the matter to which he referred was of such small materiality as not to authorize the granting of a new trial on that account. The judge did not err in re-

fusing to grant a new trial on account of the newly discovered testimony.

9. The complaint is made that the judge charged the jury that provocation by words, threats, menaces, and contemptuous gestures can in no case be sufficient to free the person killing from the guilt and crime of murder; and it is true that the judge read to the jury §65 of the Penal Code which contains (among other things) this language. It is also true that this court has on several occasions cautioned the trial judges against the use of this broad statement; but we have never said that it did not state a correct principle of law, as applied to certain classes of cases. Wherever the question of justification, from apparent self-defense, is not involved, the court, for the purpose of distinguishing between murder and manslaughter, may without error instruct the jury in the language of the excerpt referred to. The sum and substance of the previous rulings of this court on the question is that wherever this language is employed without explanation, in such a context as to mislead the jury, under the facts of the particular case, it will be error, and generally reversible error. But in the present case the judge was very careful to limit the language to its proper purpose. He plainly charged the jury that they had "the right to consider words, threats, menaces, or contemptuous gestures, in deciding whether the defendant was acting under the fears of a reasonable man;" and reiterated the statement. He further told them that the legislature had not undertaken to say that any given state of facts or circumstances should or should not be sufficient to constitute grounds of reasonable fears, and that the matter was for the sole determination of the jury. The charge as a whole was a very fair and able presentation of the issues involved in the trial. The defendant seems to have been fairly tried and legally convicted.            *Judgment affirmed.*