*King & Dell, J. H. Thomas,* contra.

---

## 2966. CHATMAN *v.* THE STATE.

1. The credibility of witnesses is a matter exclusively for the jury, and where, on the trial of a criminal case, one witness testifies positively to all the facts essential to constitute the offense charged, this court can not interfere with the verdict, no matter how many witnesses may have testified to the contrary, or how many circumstances may be adduced tending to disprove the testimony of the single witness. This is true even though an attempt was made at the trial to impeach the only witness for the prosecution, and though many witnesses testified that, from the general bad character of the witness, he was not worthy to be believed on oath.

2. The reopening of a case for the purpose of introducing additional material evidence after the testimony has closed is a matter within the discretion of the trial court. This discretion will in no case be controlled, unless it has manifestly been abused. It is not an abuse of discretion, in

a case in which there is direct proof that the defendant was guilty of unlawful sexual intercourse, to reopen the case for the purpose of supplying proof of the necessary allegation of the indictment, as to whether the parties were married or unmarried as alleged. A case should be reopened whenever it is necessary in order to obtain the truth.

3. The statement that a portion of the judge's charge which is quoted is error is valueless as an assignment of error, unless it is accompanied by the statement of some reason why the instruction complained of was erroneous, or unless it is in itself abstractly incorrect. The defect in the charge must be pointed out in the assignment of error. This is especially true when the charge complained of is the statement of an abstract principle of law generally recognized as true. Where the exception depends upon the misapplication of a legal principle which is incontrovertible, it can not be considered, unless it is made to appear in the assignment of error that the introduction of this principle in the particular case was hurtful and prejudicial to the rights of the complaining party.

4. Assignments of error which are disapproved by the trial judge can not be considered.

5. It appearing that the movant was granted eleven days in which to prepare an additional ground to the motion for new trial, based upon testimony alleged to be newly discovered, and to procure the necessary affidavits in support thereof, and that the witnesses whose affidavits were to be taken all resided in the county, the court did not err in refusing to further continue the motion for new trial. Especially is this true when it appears that by exercise of due diligence, some of the testimony might have been produced at the trial, and when, so far as appears from the record, proper diligence would have secured the necessary affidavits at the time set for the hearing.

DECIDED FEBRUARY 15, 1911.

Accusation of adultery and fornication; from city court of Franklin—Judge Loftin. September 10, 1910.

*W. C. Hodnett,* for plaintiff in error.

*D. B. Whitaker, solicitor,* contra.

RUSSELL, J. 1. The defendant was convicted of the offense of adultery and fornication, and she excepts to the judgment overruling her motion for new trial. Upon the trial one witness testified that he had on two different occasions seen the defendant and one J. T. Levens in the very act of adultery. He was specific as to the charge in each case, and minute in each detail of these two transactions. Both acts were within the two years prior to the indictment, and would have authorized conviction. No attempt was made to impeach this witness otherwise than by disproving his statement by evidence of an alibi. Another witness corroborated the prosecuting witness as to the illegal intercourse charged to have been com-

mitted on May 27, to the extent that he swore that he also saw J. T.
Levens giving the signal by beating on a stump, and that he went
up the hill and saw Levens go over the hill and the defendant also
go over the hill in the same direction. He did not testify, however,
that he followed them any further, or that he saw anything im-
proper after they passed out of his sight upon that occasion, or at
any other time. The defendant and Levens both denied that they
had ever had sexual intercourse together. Witnesses were intro-
duced who testified that both the defendant and Levens were at
their respective homes on November 5, which was the date fixed by
the prosecuting witness on which he saw the parties have intercourse
at another time, and (by a strange coincidence) both were sick.
Thus the transaction of November 5 was contradicted both by the
positive testimony of the two alleged participants in the offense
charged, and by evidence of alibi. Lambert, the prosecuting wit-
ness, testified directly to the commission of the adulterous act, both
on May 27 and November 5. As to the transaction of May
27 there was no proof of alibi by the defendant, but there was ex-
plicit denial by Levens on oath, and by the defendant in her state-
ment, because both of them stated that there had never been at any
time in their lives any sexual intercourse or improper relations be-
tween them. The jury found the defendant guilty, whether upon
the testimony as to November 5 or that as to May 27, of course,
can not be determined; but the evidence was sufficient to authorize
conviction on either.

Learned counsel for the plaintiff in error strongly insists that the
jury should not have believed the testimony for the prosecution, be-
cause the defendant had a much larger number of witnesses, and
their testimony disproved the facts testified to by the witness for the
State in relation to the transaction of May 27, and especially dis-
proved that there was any criminal intercourse on November 5.
This court is so thoroughly committed to the principle that the jury
are exclusive judges of the facts as to leave no room for discussion
or inquiry as to why the jury based their finding upon the testimony
of one witness rather than upon that of another or even of many
others. We will say, however, in passing, that the testimony of
Buck Spradlin not only corroborated the testimony of Lambert as
to May 27, but was such a circumstance as would equally corroborate
his testimony as to November 5. The credibility of the witness is

a matter exclusively for the jury, and where one witness testifies positively to all the facts essential to constitute the offense with which the defendant is charged, this court can not interfere with the verdict, no matter how many witnesses may have testified to the contrary, or how many circumstances may be adduced tending to disprove the testimony of the single witness. In *Lambert* v. *State,* 8 *Ga. App.* 206 (68 S. E. 882), in which the main witness for the State in this case was the defendant, and the present defendant the only witness for the State, and in which a very large number of citizens testified that they would not believe the prosecuting witness on oath, we affirmed the conviction, upon the facts, and with the statement that it was not within our power to determine as to the credibility of witnesses, and that even though there were no attempt to sustain the witness whom it had been sought to impeach, it was after all a question for the jury. It may be, as argued by counsel for the plaintiff in error, that the prosecution in the present case is the result of Lambert's prosecution and conviction. We can not say. However, it appears in the record in this case that the jury were apprised of the facts in relation to the prosecution against Lambert, and they passed upon his credibility as it might be affected by the prior prosecution. Whatever the truth of the case may be, this court, as courts should always do, is "feeding them out of the same spoon."

2. It appears from the record that after the testimony had closed, it was suggested that the allegation of the indictment which charged that Levens was a married man and the defendant an unmarried woman had not been referred to in the evidence. Upon the solicitor-general's bringing this to the attention of the court and asking that the case be reopened, to enable him to prove this allegation, the court admitted testimony to this effect, over the defendant's objection. The objection was not meritorious, and the action of the court in the premises was eminently correct. If the jury were not satisfied, by the evidence as to sexual intercourse, that the defendant was guilty, testimony that she was an unmarried woman could not prejudice her case. On the other hand, if the jury was satisfied, from the evidence, that the parties named had committed acts of unlawful sexual intercourse (we say "unlawful" because Mrs. Levens had appeared in person before the jury and testified that she was the wife of Levens, and hence the defendant could not have been

his wife), it would have been a travesty upon justice if the court had refused to reopen the case in order to permit the State to prove that the defendant was an unmarried woman. The case was one authorizing the jury to find either way as to the fact of unlawful sexual intercourse, and yet they could not have found the defendant guilty, even if they had found the main fact to be true, in the absence of proof that she was unmarried; because the indictment alleged she was unmarried, and because if the proof had shown that she was married to Levens, it might be a case of bigamy, but not of adultery and fornication. Under the evidence in this case, if the omission had suggested itself to the judge, and the attention of the prosecution had not been called to it, it would still have been his duty to reopen the case upon his own motion. The reopening of a case for the purpose of introducing additional material evidence after the testimony has closed is a matter within the discretion of the trial court; and this discretion will not be controlled unless it has manifestly been abused. It is not an abuse of discretion, in a case in which there is direct proof that the defendant is guilty of unlawful sexual intercourse (if the witness testifying thereto is credible), to reopen the case for the purpose of supplying proof of the necessary allegation of the indictment, as to whether the parties are married or unmarried as alleged. A case should be reopened whenever necessary in order to obtain the truth.

3. One of the grounds of the motion for new trial complains: "Because the court erred in charging the jury as follows: 'In determining where the preponderance of the evidence lies, the jury may consider all the facts and circumstances of the case, the witnesses' manner of testifying, their intelligence, their means and opportunity for knowing the facts to which they testified, the nature of the facts to which they testified, and the probability or improbability of their testimony, their interest or want of interest, and also their personal credibility, so far as the same may legitimately appear from the trial. The jury may also consider the number of the witnesses, though the preponderance is not necessarily with the greater number'." No reason is assigned why this time-honored principle, which is embodied in almost every charge, is error. In the argument it was suggested that it was inapplicable because proof of guilt in a criminal case does not depend upon the preponderance of the evidence, and the guilt of the accused must be made to ap-

pear to the exclusion of a reasonable doubt. We grant this is true, but nothing is better settled than that a reviewing court can not consider an alleged error which the trial judge had no opportunity to correct himself; and when this ground of the motion was presented to the judge, he could not pass upon its merits, for the reason that there was no sufficient assignment of error. A charge to which a general complaint is addressed may be erroneous for any one of a number of reasons, or it may not be erroneous at all. Whether it is erroneous for any reason will in every instance depend upon the particular facts and circumstances of the case. The assignment of error, at least when addressed to the charge of the court, performs the office of a demurrer. It is valueless unless it puts its finger on the point. The statement that a portion of the judge's charge which is quoted is error is valueless as an assignment of error, unless it is accompanied by the statement of some reason why the instruction complained of was erroneous. The defect in the charge must be pointed out in the assignment of error. This is especially true when the charge complained of is the statement of an abstract principle of law generally recognized as true. Where the exception depends upon the misapplication of a legal principle which is incontrovertible, it may not be considered, unless it is made to appear, in the assignment of error, that the introduction of this principle in the particular case was hurtful and prejudicial to the rights of the complaining party.

4. The judge, in certifying the bill of exceptions, says, that he not only told the jury that if they believed, beyond a reasonable doubt, that the defendant was guilty, the form of their verdict should be, "We, the jury, find the defendant guilty," but that, immediately following this, he charged also: "If you believe she is not guilty, the form of your verdict should be, 'We, the jury, find the defendant not guilty'." This disposes of the exception that the judge did not submit the form of the verdict in the alternative.

5. In addition to the exception to the judgment overruling the motion for a new trial, error is assigned in the bill of exceptions upon the refusal of the judge, on September 10, 1910, to give the plaintiff in error additional time in which to perfect a showing for new trial, based upon newly discovered evidence. It appears that the motion for new trial was originally heard on August 4, but the decision of the court was reserved. On August 30 the movant's

counsel informed the judge that on August 27 he heard of additional testimony with relation to the transaction of May 27, which would establish the defendant's innocence of the charge, and he asked for time in which to procure the necessary affidavits. The judge granted the request and set the hearing upon the motion for September 10. Even if the judge had the right to give the movant until that day to bring an extraordinary showing for a new trial, he did not abuse his discretion in refusing on September 10 to further continue the case, or in overruling the ground which was based upon newly discovered evidence. We gather from the argument that as the indictment charged the offense to have been committed on November 5, the defendant was prepared solely with reference to that date, and was taken by surprise when evidence was introduced to the effect that the act of adultery was committed on May 27 as well as on November 5. As the State is not confined to showing that an offense was committed upon the precise day named in the indictment, and may show its commission upon any day within the statute of limitations, it very frequently happens that the proof does not conform to the allegation as to date. But the judge was most liberal in giving the defendant every opportunity to establish her innocence; and as the State, under our practice, can not except to anything, we doubt not that if the judge could have been satisfied that the accused was not guilty, and that she could probably upon another trial establish her innocence, he would have granted her a new trial. In such a case justice would applaud, and the law, even in its strictness, would say well done. But if the exception as to the judge's ruling upon the ground of newly discovered evidence, so informally presented to him, can be considered at all, it is apparent that it is without merit. The first affidavits that were offered to show that the defendant was working for one Hardy and hoeing in his field at the time that Lambert had testified she was engaged in sexual intercourse with Levens were properly rejected because they were not entitled in the cause. If the judge had any right, without a written order, to postpone his judgment and reopen the case for another hearing, he certainly had allowed ample time, so far as appears from the record, for the procurement of testimony necessary to perfect the ground of the motion. Furthermore, the showing would have been insufficient even if the witnesses had made the affidavits which the defendant asked

time to have executed, because the testimony would have been merely cumulative and impeaching, even if the alibi had been technically perfect. Proof of the alibi would merely have corroborated Levens' oath and the defendant's statement that they had never at any time had sexual intercourse, and it would have tended to impeach Lambert's testimony that they did. It appearing that the movant was granted eleven days in which to prepare an additional ground to the motion for new trial, based upon testimony alleged to be newly discovered, and to procure the necessary affidavits in support thereof, and that the witnesses whose affidavits were to be taken all resided in the county, the court did not err in refusing to further continue the motion for new trial. Especially is this true when it appears that by exercise of due diligence some of the testimony might have been produced at the trial, and when, so far as appears from the record, proper diligence would have secured the necessary affidavits at the time set for the hearing.

*Judgment affirmed.*