### 6124. SMITH *v.* THE STATE.

1. The admission, over timely objection, of immaterial and irrelevant testimony is error, but is not cause for a new trial, when it is apparent that no real injury was thereby done to the accused, and that, without such testimony, the verdict would have been the same.
2. Where witnesses have been put "under the rule," at the request of counsel, it is not error for the court to receive testimony from a witness who was not sworn and sequestered, but who remained in the court-room and heard the testimony of the other witnesses and the defendant's statement.
3. It is within the sound discretion of the court, in the interest of truth and justice, to allow a case to be reopened, for the purpose of receiving additional material evidence, at any time before the rendition of the verdict.
4. The evidence authorized the verdict.
5. The fact that a witness is employed by a city, at a salary of $5 per day, to catch "blind-tigers," is a circumstance to be considered by the jury in passing upon the credibility of his testimony, but it is entirely within their discretion to believe it or to disbelieve it.

DECIDED FEBRUARY 3, 1915.

Accusation of sale of liquor; from city court of Floyd county—Judge Reece. October 17, 1914.

*John W. Bale,* for plaintiff in error.

*C. H. Porter, solicitor,* contra.

BROYLES, J. John Smith was convicted in the city court of Floyd county of the offense of selling whisky, and he excepts to the judgment overruling his motion for a new trial. In addition to the usual general grounds, there are two special grounds in the motion.

1. It is contended that the court erred in the admission of the

evidence of C. I. Harris, chief of police, who testified: "I have not known of his [the accused] doing any work this year. I have seen him standing around on the streets, and around the stable near his house on Second avenue. If he works any I don't know it. So far as I know, he don't do anything." It is contended that this evidence was immaterial, irrelevant, and prejudicial to the accused, and that it was an attempt to prove a different offense, to wit,— vagrancy. In our opinion this evidence was immaterial and irrelevant, but not prejudicial to the accused; and, the trial being otherwise free from error, and the evidence strongly indicative of guilt, this court would not be justified in a reversal because of such harmless error. The relevant evidence strongly authorized the conviction of the defendant. In *Griffin* v. *State,* ante, 552 (83 S. E. 872), where the defendant was being tried for keeping intoxicating liquors on hand at a place of business, this court held that "on the trial of a criminal case, as a general rule, it is error to allow proof tending to establish the defendant's guilt of a different crime from that with which he is charged in the indictment or accusation; but the testimony in this case, to the effect that the defendant had not done any work 'for some time,' to which the defendant objected on the ground that 'it virtually placed him upon trial on the charge of vagrancy and tended to prejudice the minds of the jurors against him,' was not sufficient to create the inference that he was guilty of that crime, in the absence of evidence that he had no property or other means of support and was able to work (Penal Code, 1910, § 449). . . If the admission of this testimony was error, the error was not of such materiality as to require a new trial." See also *Turner* v. *State,* 138 *Ga.* 808 (3), 813 (76 S. E. 349); *Watson* v. *State,* 136 *Ga.* 236 (2), 238 (71 S. E. 122); *Mixon* v. *State,* 7 *Ga. App.* 805 (6), 808 (68 S. E. 315); *Whitley* v. *State,* 8 *Ga. App.* 165 (68 S. E. 863); *Garnett* v. *State,* 10 *Ga. App.* 109 (5), 114 (72 S. E. 951).

2-3. It is also insisted that the court erred in allowing the case, over the objection of the accused, to be reopened, after both sides had closed, and the opening argument for the State had been made, and after the court had taken a recess over-night, and after the defendant had discharged all of his witnesses; and also because, while, upon the calling of the case for trial, at the request of counsel, all the witnesses had been sworn and put "under the rule," the witness

Broach, who testified after the reopening of the case, had not been so sworn or sequestered, but had remained in the court-room, and had heard part of the testimony and the statement of the accused. It does not appear from the record that the plaintiff in error made any motion to the court for time to recall his witnesses, or to meet this new evidence. The court not having denied him this right (to which, in our opinion, he was clearly entitled), there was no error in allowing the case to be reopened and Broach's testimony to be received. It is always proper for the court to permit a witness to testify, although he was not sworn and sequestered with the other witnesses, but remained in the court-room and heard the testimony and the defendant's statement. See *Thomas* v. *State,* 7 *Ga. App.* 615 (67 S. E. 707) ; *Dennis* v. *State,* 10 *Ga. App.* 219 (73 S. E. 35) ; *Merritt* v. *State,* 134 *Ga.* 263 (67 S. E. 797). And it is within the sound discretion of the judge in the interest of truth and justice, to permit a case to be reopened at any stage of the trial, before the rendition of the verdict, for the purpose of receiving further material evidence ; but he should, of course, give either side, if requested so to do, reasonable opportunity to meet and rebut, if possible, such new testimony. *Glasco* v. *State,* 137 *Ga.* 336 (73 S. E. 578) ; *Caswell* v. *State,* 5 *Ga. App.* 483 (3), 486 (83 S. E. 566) ; *Abbott* v. *State,* 11 *Ga. App.* 43 (5), 44 (74 S. E. 621) ; *Chatman* v. *State,* 8 *Ga. App.* 842 (2), 845 (70 S. E. 188). In the *Chatman* case it was well said that "a case should be reopened whenever it is necessary in order to obtain the truth."

4-5. The evidence authorized the verdict. The fact that Charles Johnson, the main witness for the prosecution, was employed by the City of Rome to catch "boot-leggers," or "blind-tigers," at a salary of $5 per day (which he admitted was the largest wages he ever received), was a circumstance to be considered by the jury in passing upon the credibility of his testimony ; but as he was unimpeached, and his evidence, if true, clearly established the defendant's guilt, and the jury, as appears from their verdict, having evidently believed him, the court did not err in refusing a new trial on the ground that the verdict was contrary to the law and the evidence and without evidence to support it. *Ford* v. *State,* 13 *Ga. App.* 68 (78 S. E. 782) ; *Walker* v. *City of Atlanta,* 10 *Ga. App.* 28 (72 S. E. 511) ; *Dewberry* v. *State,* 9 *Ga. App.* 822 (72 S. E. 282) ; *Chatman* v. *State,* supra ; *Waycaster* v. *State,* 136 *Ga.* 95

(70 S. E. 883) ; *Solomon* v. *State,* 10 *Ga. App.* 469 (73 S. E. 623) ; *Williams* v. *State,* 9 *Ga. App.* 818 (72 S. E. 301) ; *Widener* v. *State,* 9 *Ga. App.* 302 (70 S. E. 1119).        *Judgment affirmed.*

RUSSELL, C. J., dissenting.  I concur, of course, unhesitatingly in the general principle announced in the first headnote, that harmless error should never work a new trial, but I do not think it is at all applicable to the facts of this case.  It rests in all human observation that proof of bad character tends to confirm, as sufficient, circumstances indicating guilt—which otherwise would be doubtful.  It may render unimpeachable positive proof of guilt which, but for this evidence as to bad character of the accused, would probably be and might properly be discredited by a jury.  For this reason the law will not allow the prosecution to put the defendant's character in issue.  In *Griffin's* case, cited by the majority, this court held merely, as I understand it, that the proof that the defendant had not worked for some time did not support the inference of his guilt of the crime of vagrancy; and that even if the admission of testimony to that effect was error, it was cured (under a well-settled rule) by the fact that "there was testimony of another witness for the defendant to the same effect, to which no objection appears to have been made."  Based upon what is said in *Griffin's* case, I might consent to hold that the complaint that the proof showed a violation of another criminal law is not sustained; but I do not think that, in the interest of fair and impartial trials, it can be safely held that irrelevant and immaterial testimony which is bound to prejudice a defendant on trial for his liberty should be admitted in the face of an appropriate and timely objection.  It is elementary that the record with which a defendant charged with crime enters upon his trial is a clean sheet, and unseen and invisible are any marks of approval or disapproval which time and the judgment of his acquaintances have entered as the history of his past.  The law of our State very wisely attempts to afford every safeguard which will prevent any citizen from being deprived of his liberty by any means except facts which satisfy the minds and consciences of the jury of his guilt of the offense with which he stands charged.  The books are full of decisions in which verdicts of guilty have been set aside for prejudicial remarks on the part of the court, counsel, or bystanders.

To my mind, to allow a witness to testify that a defendant is of

bad character as to any particular trait which may make him in the eyes of all mankind a common reprobate may be just as prejudicial as to allow proof that he had been guilty of a crime. Bad character can as well be shown by the habit of committing some acts recognized as base and contemptible (but not penalized by law) as by the commission of some other acts which the law has declared to be criminal. Mankind is so constituted that men readily seize and act upon a "bad name." To prove, as was done in this case, that the defendant never worked certainly presented to the jury evidence that the accused was a trifling character; and, as a natural consequence, the defendant and his statement would receive but slight shrift at the hands of the jury; and furthermore, this irrelevant and prejudicial testimony created an atmosphere in which every favorable circumstance which might have been derived from other evidence or other proceedings in the trial would be distorted to the disadvantage of the accused. Not only is all honest labor honorable, but idleness, unless absolutely enforced, is always dishonorable and contemptible,—a menace to society and an evidence of ingratitude to the Creator. Regardless of the fact that the defendant's mode of life in the present case was insufficient to establish all of the essential ingredients of our statutory offense of vagrancy, a mere reference to the testimony of the officers, to the effect that they never knew of the defendant's working, suffices to show an indirect attempt to substitute suspicion for proof of guilt, and to bolster testimony—which should have found its proper support in its inherent verity—by an appeal to prejudice. The true law abhors a finding tinctured with either doubt or prejudice. Proof that the defendant was a notorious scandal-monger or a Ransy Sniffle, or proof that a defendant charged with cheating and swindling was a notorious liar in the community where he lived, would not involve the commission of a crime made penal by the laws of this State, but it rests in the experience of every practitioner that the introduction of such matter would be so extremely prejudicial to the accused as to greatly minimize his chances for an acquittal, which the law intends shall be equal with the chances afforded the prosecution for conviction.