### 37234. ESTES *v.* THE STATE.

TOWNSEND, Judge. This defendant was tried in the Criminal Court of Fulton County on a nine-count indictment charging him with carrying on nine separate lotteries on specific dates. On his conviction of each count, nine separate consecutive sentences were imposed. His exception is to the judgment of the Superior Court of Fulton County overruling his petition for certiorari which contained, among others, an assignment of error contending that the verdicts are contrary to the evidence. This case differs from the usual single-count lottery indictment where if it is shown that in the county of venue, there are lotteries in continuous operation in which various

persons participate, proof of the manner of their operation and that the defendants participated therein during the period of the statute of limitations authorizes conviction for carrying on lotteries under Code § 26-6502. Here the defendant is charged with carrying on lotteries in a multiple-count indictment, the date of each offense being alleged as an essential averment thereof so as to particularize and segregate each offense alleged in each count, as opposed to à general indictment covering the entire period of the statute of limitations. It is accordingly necessary for the evidence to show as to each count contained in the indictment that the scheme and device for the hazarding of money contain the three elements essential to constitute the offense of lottery, to wit, consideration, chance and prize.

The evidence here showed sales made on each of the dates alleged in the indictment by an employee of the defendant which, as to each of those dates, established the elements of consideration and chance. Nowhere in the evidence, however, does it appear that the prize, the third element of the scheme, was separate as to each of the dates alleged in each of the counts of the indictment. So far as can be determined from the evidence there may not have been more than one prize involved. There being nine counts in the indictment upon which the defendant was convicted, the evidence must show, in order to be sufficient to support the verdict as to each count, nine prizes. Evidence appears as to the manner in which this particular type of lottery was operated in this locality showing that chances are sold by employees of the operators on prizes to be determined by certain parts of numbers to be taken from the totals of stock and bond market sales as the same may appear in a future publication of a newspaper. The evidence here fails to show from which future publication the prize numbers were to be selected for the chances sold on behalf of the defendant. Had it shown a separate publication from which the prize number would be selected as to each count in the indictment, and had it shown that chances were sold on behalf of the defendant relating to each such prize, then the evidence would support the indictment as to each of the nine counts on which the defendant was convicted. The evidence here is sufficient to show the elements of consideration, chance and prize generally, but not so as to show a complete lottery related to any count. It

is accordingly insufficient to support the verdict on any count. The State relies on *Martin* v. *State*, 73 *Ga. App.* 573 (37 S. E. 2d 411) and *Smith* v. *State*, 74 *Ga. App.* 777 (41 S. E. 2d 541) in support of its contention that this case ought to be affirmed. There is nothing in those cases in conflict with what is here held. Those opinions hold that separate counts may be predicated on the keeping of separate lotteries in the same indictment, and this we reaffirm here. However, it has always been the law that where separate counts are contained in an indictment the evidence must be sufficient *as to each count* and must be sufficient to show that the several counts relate to distinct transactions. Nine separate lotteries having been alleged to have been carried on by the defendant, and the defendant having been convicted for these nine separate and distinct crimes, the evidence in order to be sufficient to support the verdict must show a separate crime as to each conviction; otherwise, a defendant may be convicted more than once for the same offense in violation of art. I, sec. I, par. VIII of our Constitution (Code, Ann., § 2-108).

The remaining assignments of error are not likely to recur upon another trial of this case, or are without merit.

The judge of the superior court erred in overruling the petition for certiorari.

*Judgment reversed. Carlisle, J., concurs. Gardner, P. J. concurs specially.*

DECIDED NOVEMBER 4, 1958.

*George G. Finch, Joe R. Edwards*, for plaintiff in error.

*Paul Webb, Solicitor-General, John I. Kelley, Solicitor, Henson McAuliffe, Broadus B. Zellars, Eugene L. Tiller*, contra.

GARDNER, Presiding Judge, concurring specially: Willie Harrison Estes (hereinafter called the defendant) was tried before a jury in the Criminal Court of Fulton County on nine counts of operating a lottery. Count 1 reads: "The grand jurors . . . charge and accuse William Harrison Estes alias Willie Estes with the offense of misdemeanor (lottery) for that said accused, in the County of Fulton and State of Georgia, on the 18th day of February, 1957, with force and arms, did keep, maintain, and operate a lottery known as the number game, for

the hazarding of money; the date herein alleged being an essential averment as to this transaction; contrary to the laws of said State, the good order, peace and dignity thereof." All the other counts were similar in nature except as to the dates. The dates are: Count 2, February 19, 1957; Count 3, February 20, 1957; Count 4, February 21, 1957; Count 5, February 25, 1957; Count 6, February 26, 1957; Count 7, February 27, 1957; Count 8, February 28, 1957; and Count 9, March 1, 1957. He was found guilty on all nine counts and sentenced to serve twelve months on each, the sentences to run consecutively. The defendant, being dissatisfied with the judgment and sentence, presented his petition for a writ of certiorari to the Superior Court of Fulton County, alleging errors in his trial.

Judge Bruce of the Criminal Court of Fulton County filed his answer to the petition for a writ of certiorari. The defendant filed exceptions to the answer substantially to the effect that the answer was not full and complete. Judge Bruce filed an amendment to his answer substantially as follows: (1) Respondent certifies to the fact that written requests to charge were presented to him within the statutory time; (2) Respondent approves as true and correct the allegations that the petitioner "has complied with all the requirements of law, he has given bond in the amount assessed by the trial judge, which bond has been attested, accepted and approved by the clerk of said court."

The Judge of the Superior Court of Fulton County refused to enter an order sustaining the exceptions of the defendant and overruled the defendant's petition for a writ of certiorari. It is on exception to this judgment of the Superior Court of Fulton County that the case is here for review.

The evidence shows substantially: John Hopkins, a witness for the State, testified substantially that during the time the defendant was accused of playing the numbers game he was an investigator in the office of the Solicitor-General of the Criminal Court of Fulton County; that he is familiar with the lottery known as the number game; that he had been with the county at that time approximately 14 years; that during that time he became familiar with the lottery known as the number game through making arrests of people charged with lottery, trying

them in court, and talking with people who had been in the lottery business such as bankers, writers and pickup men in the game; that the lottery is sometimes known as the "bug" and is operated by one or more people called "bankers" who in turn employ pickup men or women as writers; that the writers go over the city and county soliciting bets to be placed on three-digit numbers, which numbers are obtained from the 100,000 and 10,000 digits of the total bond sales, and the 10,000 digits of the total stock sales; that the writers go over the city and county seeking bets, which range from a penny up, on any one three-digit number; that if this three-digit number appears in the total bond and stock sales for that particular day, the player is paid 500 to 1, less 10 percent to the writer; that the writers also are paid a salary for writing or soliciting the business, usually 25 percent of the total sales they make during the day; that each writer has a designated writer's number, which might be for instance X-1, X-2 or B-3, usually using a letter or two or perhaps three letters; that writers or players do not put their correct name on the tickets; that a lottery book contains 150 pages which consists of 50 yellow sheets, 50 tissue sheets and 50 white sheets; that the yellow sheets are turned in by the writers to the pickup men, the tissue sheet is held by the writer, and the white sheet is given to the player; that a lottery book is not always used; sometimes a paper sack or notebook or anything may be used but that each writer must turn in the book at a designated place before 2 o'clock of that day, this being turned in to the pickup man; that the pickup man turns the proceeds over to the "drag man" who is the person who takes the tickets to headquarters and that usually only the drag man knows where the headquarters are located; that the numbers are figured as to whether there were any hits for that day at the headquarters; that if a person plays a certain number and that number falls for that day that person gets an average of 500 to 1; if a person should bet 1¢ on the winning number he would receive $5.00 less ten percent to the writer but if the number on which he bet did not appear that day the player would receive nothing, nor would he receive his money back. The witness testified that on February 18, 1957, the lottery game was in

526

operation in Fulton County. Counsel for the defendant objected to this testimony and the court ruled that, inasmuch as the witness was testifying as an expert, such testimony, when connected up properly, was admissible, whereupon the witness testified: "After looking at a calendar for the year 1957, on the 18th of February, 1957, February 19th, February 20th, February 21st, February 25th, February 26th, February 27, February 28th, and on March 1st, there was such a lottery known as the number game being carried on in Fulton County, Georgia." On cross-examination the same witness testified that he did not know who was in the lottery business on February 18, 1957, or on the other dates mentioned.

Jake Phillips testified that he has been in the lottery business as a pickup man in 1953 for Mr. Horace Ingram; that he went to work for Willie Estes in 1953 and has worked continuously until the last of March 1957; that he would start at 6 in the morning picking up numbers until around 1, then take them to the Odd Fellows Building and turn them in to Willie Estes or another fellow known as the station man; that the witness was supposed to get ten percent for his work; that he had several hits and Willie would pay him; that he would then give the money to the winning person; that he was arrested twice while he was a pickup man for the defendant Estes and that Estes got him out on bond; that one time when he was arrested he took the bond money out of the money he had collected that day and turned the other money over to the defendant Estes. The witness testified: "Specifically, I was engaged as a pickup man in this lottery operation known as the number game for the defendant Willie Estes here, on February 18th of this year, on February 19th, February 20th, February 21st, February 26th, February 27th, February 28th, and on the 1st of March 1957." The witness further testified that he was a pickup man for Catherine Clark.

Catherine Clark testified that she knew the defendant as far back as 25 years ago; that she had been engaged in the lottery known as the number game since 1955, as a writer; that she would take bets from people and that after they were all written down for a certain day she would put them somewhere and in

the afternoon when they found out the results she would look over the record of bets of players from whom she had collected money and see whether any of them had hits; that after she finished with the numbers either Jake Phillips or his wife or someone who worked for Phillips would pick up the tickets and that Phillips would pay her off. (Note that Phillips stated in his testimony that he worked for Estes.) The witness further testified that when Phillips would not pay off on the hits sometimes the defendant Estes would do so. She remembered two or three times that the defendant Estes paid her "those hits." The witness testified that the defendant Estes let the witness have $150 toward a $300 fine. She also testified that she participated in the lottery up to and including March 1957 but that she was not a writer after December 1956.

J. W. Gilbert testified on behalf of the State that the defendant signed bonds for lottery operators and when questioned as to why the defendant was so interested in signing the bonds the defendant said if the lottery business was closed out "you all are fixing to put 15,000 people out of work."

Dorris Austin, a probation officer, testified that the defendant gave Catherine Clark some money.

The defendant stated that he had never been in the lottery business and that he befriended Catherine Clark and others.

1. Code § 26-6501 reads: "Any person who, either by himself or his agent, shall sell or offer for sale, or procure for or furnish to any person any ticket, number, combination, or chance, or anything representing a chance, in any lottery, gift enterprise, or other similar scheme or device, whether such lottery, gift enterprise, or scheme shall be operated in this State or not, shall be guilty of a misdemeanor."

Code § 26-6502 reads: "Any person who, by himself or another, shall keep, maintain, employ, or carry on any lottery or other scheme or device for the hazarding of any money or valuable thing, shall be guilty of a misdemeanor."

For emphasis I here reiterate part of the testimony of the witness Phillips who testified that Phillips went to work for the defendant Willie Estes in 1953 and worked for him continuously until the last of March 1957; that he would start at

six in the morning picking up numbers until around one, then take them to the Odd Fellows Building and turn them in to Willie Estes or another fellow known as the station man; that the witness was supposed to get ten percent for his work; that he had several hits and Willie would pay him; that he would then give the money to the winning person; that he was arrested twice while he was a pickup man for the defendant Estes and that Estes got him out on bond; that one time when he was arrested he took the bond money out of the money he had collected that day and turned the other money over to the defendant Estes; the witness testified: "Specifically, I was engaged as a pickup man in this lottery operation known as the number game for the defendant Willie Estes here, on February 18th of this year, on February 19th, February 20th, February 21st, February 26th, February 27th, February 28th, and on the 1st of March 1957." The witness further testified that he was a pickup man for Catherine Clark. In order to complete the chain of testimony further which shows conclusively that the defendant was operating the lottery on the days named in the indictment, I mention again that Catherine Clark testified that she had been engaged in the lottery known as the number game since 1955, as a writer; that she would take bets from people and that after the bets were written down for a certain day, after the results for the day were ascertained, she would see whether any of her betters had hit and that then either Jake Phillips or someone who worked for Jake Phillips would pick up the tickets and that Phillips would pay her off (at this point be it remembered that Phillips stated in his testimony that he worked for the defendant). The witness Clark further testified that sometimes the defendant Estes would pay off. There is much other evidence to the same effect from other witnesses.

Under the allegations of the petition and the evidence appertaining thereto it is my opinion that the evidence is sufficient to sustain the verdict under all the counts. It has been many times held that a defendant may be convicted on proof that he did *any* of the several acts concerned in carrying on the gambling device known as lottery. The transaction need not be completed. In *Dodys* v. *State,* 73 *Ga. App.* 311, 316 (36 S. E. 2d

164), this court ruled specifically on this point. In that case Code § 26-6502 was quoted, and the court said, among other pertinent things: "If the defendant here was guilty at all, he was guilty as a principal in the first degree, because, in misdemeanors, there are no such things as principals in the second degree, or accessories. *Lewis* v. *State*, 33 *Ga.* 131. *Thus the defendant could be convicted on proof that he, directly and personally, did any of the several acts entering into the conduct of such lottery business, a misdemeanor, or that he procured, counseled, commanded, aided, or abetted the criminal transaction of another who was the direct and immediate actor.* [Italics mine]. *Thomas* v. *State*, 65 *Ga. App.* 749 (16 S. E. 2d 447)." See also *Mills* v. *State*, 71 *Ga. App.* 353 (6) (30 S. E. 2d 824) which reads as follows: "Where, as here, in a proper case as made by the evidence, it is not error for the court to charge that all who participate directly or indirectly in the commission of a disdemeanor, or who procure, counsel, aid, or abet the commission of such misdemeanor, are principals." It will thus be seen that it is not even necessary to show the actual *operation* or *completion of the lottery*, even as it is not necessary to show that a slot machine was operated, but it is only necessary to show that a defendant was in possession of a slot machine or any portion of a numbers gaming device (such as a book identified as a book used to take bets in the numbers racket, or any paraphernalia used in operating the racket), in order to convict a defendant. In *Elder* v. *Camp*, 193 *Ga.* 320 (2) (18 S. E. 2d 622) the Supreme Court said: "The mere keeping of a device for the hazarding of money being prohibited by law, and a device so kept being contraband, it is unnecessary, in showing the illegality of the device, to allege and prove a further violation of law by its actual operation." It will thus be seen that it is not even necessary to prove that the game was in operation on a day alleged in the indictment. And the cases cited and those quoted from show that it need not be shown that the lottery be *completed*. It is clear to me that the contention that the lottery be *completed* on any date alleged in an indictment is contrary to the holdings in the cases cited and discussed in any portion of the majority opinion. However,

there is sufficient evidence in the instant case to show that the defendant was in. the actual operation of the numbers racket on the several days alleged in the indictment as shown by the testimony of the witness Phillips and the witness Clark and other testimony shown hereinabove.

The majority opinion relies on *Williams* v. *State,* 65 *Ga. App.* 843 (16 S. E. 2d 769). That case can not be the basis for the reversal of the instant case, in my opinion, because in that case the conviction of the defendant was not upheld by this court because the officer who played the machine testified that "he received no prize of any kind, saw no one else receive any prize, and did not know that the machines would automatically pay off in coins or other things of value, although one of them, he could not recall which, was constructed with two-coin compartments, and a place for coins to come out, and the officer did not know that it was operated so that coins would come out." On page 844 of *Williams* v. *State,* supra, in addition to what I have quoted hereinabove, the court said: "Under the statute now under consideration it is unlawful to maintain, keep, employ and carry on a ball machine, or other device operated similarly to such described slot machines. But the evidence in the instant case was insufficient to so classify the device here involved." It will thus be seen that the court specifically held that the *Williams* case was not binding authority for an appellate court to hold that it was legal to "maintain, keep, employ and carry on a ball machine, or other device operated similarly . . ."

While it is not necessary to allege and prove violation of the lottery law by actual operation, as stated in the majority opinion, and as shown in *Elder* v. *Camp,* 193 *Ga.* 320, supra, cited in the majority opinion (and by other cases cited in. this special concurrence and by cases not cited by the special concurrence or by the majority opinion) in the instant case there was positive testimony that the numbers racket was in operation and being participated in by the defendant on all the days alleged in the indictment.

Under all the evidence in the instant case and in many other cases where we have upheld conviction of a defendant for par-

ticipating in the numbers racket, the evidence shows that the money is played by the player, is picked up by the pickup man for that particular day, and turned over to the banker for that particular day, and *no other day*. The instant case shows from the testimony of Catherine Clark (and many other cases show) that the stock market returns for the day the money is played are used to determine the pay-off number or numbers of that day. It is immaterial whether or not the money is actually paid to the winner on that day. I have hereinbefore cited many decisions holding that the full operation need not be completed on that day, or at all. It could very well be that no one bet on the winning number, hence there would be no pay-off. The majority opinion takes the position that the testimony fails to show that there were stock and bond total sales printed in Atlanta papers on the days mentioned. A reference to the Atlanta Journal of the days mentioned shows that the stock market sale totals were printed for each of the days mentioned in the indictment. The indictment accuses the defendant of participating in the numbers racket on the following days: February 19, 1957 (This was a Tuesday). February 20, 1957 (This was a Wednesday). February 21, 1957 (This was a Thursday). (The indictment did not charge the defendant with participating on Friday, February 22, 1957 which was Washington's Birthday, a national legal holiday, when the stock market is closed. The indictment did not charge the defendant with participating on Saturday or Sunday, days when the stock market is always closed). February 25, 1957 (This was a Monday). February 26, 1957 (This was a Tuesday). February 27, 1957 (This was a Wednesday). February 28, 1957 (This was a Thursday). March 1, 1957 (This was a Friday).

It will thus be seen that the indictment charged the defendant with participating on each and every separate day that the stock market was in operation from February 19 through March 1, 1957, both inclusive. The evidence shows that the bets were placed, the papers show that the stock market totals were printed and there is no reason for this court not to assume that each separate day the betting was started and completed (even if completion was necessary). The evidence shows conclusively

that the defendant participated on every date charged in the indictment. The law says that every time he participated in the lottery such was a separate offense.

Moreover, there are a number of cases pertinent to the case at bar which were decided *before* the creation of the Court of Appeals (Vol. 1 of the Court of Appeals Reports shows that the first case was decided by the Court of Appeals on January 11, 1907). In *Thomas* v. *State,* 118 *Ga.* 774, 775 (45 S. E. 622) (decided before the creation of the Court of Appeals) the Supreme Court said in passing upon a lottery case: "As the statute makes penal the keeping, maintaining, or carrying on such a device, it was sufficient to show the keeping or maintenance of such a scheme, without going further and proving an actual drawing."

The majority opinion is attempting to say that the stock market totals for the day must appear on the day the indictment accuses the defendant of participating in the operation of the lottery. This is diametrically opposite to what even the majority opinion admits, that an actual drawing need *not* be proven. If the majority opinion is making certain of the figures covering the total stock and bond sales of each day an essential element of proof of participation in the lottery, to my mind this is tantamount to saying that the actual drawing must be proven on each day. So far as I can see from the record now before me, there was an actual drawing on each day even though such need not be proved, as has been many times held.

In *Morgan* v. *State,* 119 *Ga.* 964 (3) (47 S. E. 567) (also decided before the creation of the Court of Appeals) the Supreme Court said: "A person may commit but one offense of carrying a weapon concealed upon his person, although he carries it thus concealed from place to place and in the presence of different people at the different places; but whenever the continuity of the act constituting the offense is broken, that particular offense is at an end, and another like offense is committed when the weapon is again concealed by him upon his person." On page 965 of that same opinion the court said: "The defendant had a pistol concealed in his pocket on the day charged in the indictment, in the presence of the person named in the present bill of

indictment, when the pistol fell out of his pocket, and he picked it up and put it back in his pocket. A short while thereafter he left and went to his home in the little town of Cohutta, where he is charged in both indictments with carrying a pistol. On the trial of the case pleaded in bar it was shown that defendant, after coming into his house, took the pistol out of his pocket after he arrived at home and laid it upon the mantel in the presence of other witnesses, sat by the fire and talked with those present, including the State's witnesses, put the pistol in his pocket and went out with it. All of this was done in the same day and within an hour or two of the same time." On page 967 of that opinion the court said: "So, from the agreed facts, it appears that the accused at another place, his home, in the presence of Ballinger and the other persons mentioned in the indictment under which he was convicted, committed two separate and distinct offenses of carrying a pistol concealed upon his person. He committed one offense in the presence of these persons when he came into his house, and into their presence, with the pistol concealed upon his person; and this offense was terminated when he took the pistol from his pocket and placed it upon the mantel. He committed another like offense in their presence when he subsequently took the postol from the mantel and again concealed it upon his person and went out of the house." It will be noted that in that case the two offenses of carrying concealed weapons occurred *on the same day.* It follows that in the lottery gambling device when any one act is done which is a part of the carrying on of a lottery, that act completes the crime that day and when any one act which is a part of the carrying on of a lottery is done on another day that act completes another crime or violation of Title 26 of the Code regarding prohibition of the gaming device known as lottery.

The majority opinion has attempted to differentiate this case from the ruling which I am making in my concurring opinion by phraseology quoting excerpts only from that case and attempting to make such apply to the facts of the instant case. I have gone extensively into the ruling in *Morgan.* v. *State,* 119 *Ga.* 964, supra. Certainly if two offenses of carrying concealed weapons

can be proved on the indictment as shown in the lengthy opinion of the Supreme Court in that case, it is inconceivable to my mind that the instant case does not show separate offenses committed not on the *same day,* but on separate days.

In *Loomis* v. *State,* 78 *Ga. App.* 153 (51 S. E. 2d 13) the defendant was accused in five counts all of which contain substantially the following language: In that he did unlawfully, without authority, exercise and attempt to exercise the functions of a policeman and police officers, to wit: The Chief of Police of the City of Atlanta, Georgia, a municipal corporation. (Count 5 substitues Sheriff of Fulton County in lieu of Chief of Police of the City of Atlanta). Each count alleges a usurping of police powers at various points in Atlanta, Georgia. This court upheld the trial court in convicting the defendant on all counts. The Supreme Court denied certiorari. It appears that the offense in each count was substantially the same.

In *Bryan* v. *State,* 120 *Ga.* 201, 202 (47 S. E. 574) (also decided before the creation of the Court of Appeals) Judge Lamar said in speaking for the court: "The words 'keep' and 'maintain' are frequently used as synonymous, but if under the Penal Code, § 398, the offense may be committed by keeping or maintaining or by keeping and maintaining, *proof that he had been guilty of either of the prohibited acts would sustain a charge that he had kept and maintained."* (Italics mine). From these decisions it will be readily seen that the defendants there were convicted on counts charging the defendants with committing the same crime on different days. The defendant in the instant case committed a crime with each act committed on each day and the evidence is sufficient to convict him of participating in the lottery known as the number game contrary to the provisions of the Code prohibiting the operation of the lottery.

If, as is testified to by a witness in the case at bar, 15,000 people will be out of work should this case be decided against them, it is reasonable to assume that if this case is decided in favor of the defendant that the number of people entering into and operating the numbers racket will noticeably increase since it will be much harder to prove participation than it has been

under the rulings of the many cases which have been decided by this court and the Supreme Court heretofore.

*Smith* v. *State*, 74 *Ga. App.* 777 (41 S. E. 2d 541) holds exactly the contrary to the interpretations put on this case by the majority opinion. The original record in that case shows that the defendant, upon trial, was found guilty on six counts alleging participation in the operation of the lottery under each of the counts. There was no difference in the counts—in fact they were identical except as to the dates. In that case on page 788 this court said in regard to special ground 12: "This ground assigns error because the court charged the jury that each count of the indictment alleged a separate and distinct offense, whereas the defendant contends that there was only one offense charged in the fifteen counts. This contention has been decided adversely to the contentions of the defendant in the case of *Martin* v. *State*, 73 *Ga. App.* 573 (4-8) (37 S. E. 2d 411). The indictment in the instant case was drawn in the main in the language used in the *Martin* case. The court did not err in overruling this ground of the petition for certiorari."

In *Martin* v. *State*, 73 *Ga. App.* 573 (referred to in *Smith* v. *State*, supra) this court said: "3. The first count in the accusation charged a misdemeanor, as follows: 'That the said Wesley Barron, alias Fred Martin, in said County of Fulton, on the 16th day of August, 1943, did keep, maintain, and operate a lottery known as the number game, for the hazarding of money; *the date herein alleged being an essential averment as to this transaction;* contrary to the laws of said State, the peace, good order and dignity thereof.' . . . Each of the other 14 counts in the accusation is the same, except that each alleges a different date, and each of course alleges that such date is 'an essential averment as to this transaction,' alleged in the particular count.

"4. With regard to similar misdemeanors covering a period of time within the statute of limitations, which is two years, the prosecution may elect to charge a particular offense at a particular time, or charge a general offense which would cover in one count the whole period of two years prior to the filing of the accusation, and proof of the commission of the misdemeanor on any date within two years prior to the filing of the

accusation, including the date alleged, would authorize a conviction, and only one punishment could be inflicted for such general offense.

"5. The prosecution here elected to charge a particular congruous offense at a particular time in each count, and the words in each count, 'the date herein alleged being an essential averment as to this transaction,' make the date in each count essential to identify the particular transaction described in that count.

"6. Such averments in each count distinguish the offense charged therein from all the other offenses charged in the other counts of the indictment on the other particular days alleged in such other counts. . .

"8. Under an accusation in the form in which this was drawn, there is no one day common to two counts, and the accusation does not charge a general offense; but each count charges a particular offense, and when the defendant is convicted on each of the 15 counts, 15 punishments as for a misdemeanor may be inflicted."

To the same effect see: *Hudgins* v. *State*, 22 *Ga. App.* 242 (95 S. E. 875); *Cook* v. *State*, 22 *Ga. App.* 789 (97 S. E. 258); *Williams* v. *State*, 8 *Ga. App.* 583 (70 S. E. 47).

I think I might assume that the lottery racket is not operated by idiots. The operators have at least brains enough not to go around collecting money and go through the whole process on a day when there would be no way of determining the manner of winning. Why should they do this? The players would soon catch on and stop playing.

There is no record, so far as my research has been able to determine, where an indictment for the numbers racket has ever been drawn covering a day when there was no stock market report. I have searched the Georgia Reports and Georgia Appeals Reports records and I have checked the days on old calendars and have checked covering indictments alleging lottery operation on specific days and find that each and every day the stock market was in operation, as shown by published returns. Even in England where they let the hogs root for truffles they take the muzzles off occasionally and let the hogs

win something. The lottery operators are smart enough to let the suckers have a chance, even if it's only a 500 to 1 chance, this being the estimated chance of winning as shown by testimony in this and in other reported cases.

There is no merit to the contentions regarding paragraphs 1, 2, and 3 of the petition for certiorari, which refer to the evidence.

2. Paragraph 4 subparagraph (a) of the petition for certiorari contends that the verdict was contrary to law, and contrary to the evidence in that the witness Jake Phillips was impeached by proof of conviction of a felony, a crime involving moral turpitude, and he was not corroborated by creditable evidence. This was clearly a question for determination by the jury under the record of this case. See *Brown* v. *State,* 10 *Ga. App.* 50 (72 S. E. 537). It must be kept in mind that even if a witness is successfully impeached it is a jury question as to whether his testimony has been corroborated. Moreover, a jury has a right to believe the testimony of a witness, even though impeached, and even in the absence of any corroboration. See *Brown* v. *State,* supra. See also *Powell* v. *State,* 101 *Ga.* 9 (5) (29 S. E. 309, 65 Am. St. R. 277); *Hudgins* v. *State,* 7 *Ga. App.* 785 (68 S. E. 336); *Chatham* v. *State,* 8 *Ga. App.* 842 (70 S. E. 188) and *Calhoun* v. *State,* 17 *Ga. App.* 515 (87 S. E. 762). This assignment of error is not meritorious.

Paragraph 4 subparagraph (b) of the petition contends that the court erred in admitting testimony of a witness for the State, John Hopkins, such testimony being to the effect that on February 18, 1957, and on other dates set out in the indictment there was a lottery known as the number game being carried on in Fulton County. Counsel for the defendant objected to the testimony on the ground that it is a conclusion, an opinion, and not supported by cross-examination of the witness, when the witness swears that he does not know of one single person engaged in the lottery business on that date. The court overruled the motion to strike this testimony. The witness Hopkins did not accuse the defendant in the testimony of the witness. Almost the identical question was passed upon in *Mills* v. *State,* 71 *Ga. App.* 353, supra, wherein this court, after setting up al-

most the same evidence as appears in the instant case, that evidence also being elicited from a police officer, said: "Since this same contention is constantly made in this class of cases, we have gone to considerable research in an effort to clarify the question, if there should still remain any doubt concerning it. . . Section 38-1708 deals with opinions of lay witnesses. . . [The lottery] thrives to such an extent that the peace authorities deem it necessary to assign special officers to the task of suppressing it. Not only as to this enterprise is such evidence as is here objected to admissible, but from an early time the Supreme Court has held in numerous cases that . . . any witness may swear to his opinion or belief when the question to be decided by the jury is one of opinion, provided the witness gives his reasons for his opinion. . . The Supreme Court in *Manley* v. *State,* 166 *Ga.* 563 (7) (144 S. E. 170), uses the following language: 'Where a witness knows a fact both from his personal knowledge and from hearsay, and the issue is one upon which the witness can express an opinion after giving the facts, it is competent for such witness to testify that he knows the facts upon which he bases his opinion both from his personal knowledge and from hearsay.'" This assignment of error is not meritorious.

Paragraph 4 subparagraph (c) of the petition for certiorari assigns error because it is alleged that the court expressed an opinion regarding evidence that the defendant gave Catherine Clark, a witness for the State, $150 to pay on a fine for her. Counsel for the defendant moved to strike the question regarding such payment as being a leading question propounded to Catherine Clark as to such payment. The court ruled that the question propounded at that time was a repetition of a previous question to which no objection was made by counsel for the defendant. Catherine Clark testified that she was engaged in the lottery game as a writer, that Phillips paid off most of the time but that the defendant paid off two or three times; that she was arrested, a $300 fine was imposed against her; that her husband and her nephew paid $150 of the fine and "Mr. Estes let me have the other $150." No objection was made to this testimony, but immediately following this testimony the solici-

tor asked the following question: "In other words, Willie Estes, the defendant here, gave you $150 on that fine?" It was on that question that counsel for the defendant made the motion to strike, which the court overruled on the basis that it was a repetition of a previous question. Then counsel for the defendant undertook to cross-examine the witness and asked the question: "Did he [the defendant] lend you $150?" Answer: "Yes, sir. Willie Estes loaned me $150.00 . . . on the morning of December 6th . . ." In view of other testimony of the same witness, the court did not err in refusing to strike the particular question to which counsel for the defendent objected in this ground.

Paragraph 4 subparagraph (d) assigns error because it is alleged that the court erred in refusing to grant a mistrial because of improper, inflammatory, and prejudicial argument to the jury by the solicitor which counsel for the defendant interpreted as an attempt on the part of the solicitor to put the character of the defendant in issue. The solicitor invited testimony to show that the defendant was in any other business other than the lottery game and this is what counsel for the defendant objected to as being prejudicial. The court denied the motion for a mistrial and instructed the jury as follows: "I instruct you gentlemen to disregard altogether the statement of the solicitor to the effect that you have just heard stated into the record again by the solicitor in order that the court may understand exactly what the objection points to. What the solicitor has said has no bearing on any of the issues in this case and must be absolutely disregarded in toto by you gentlemen." See *Dorsey v. State,* 204 *Ga.* 345, 351 (49 S. E. 2d 886) wherein the Supreme Court said: "Ground nine of the amended motion complains of the following argument of counsel for the State: 'Gentlemen of the jury, this defendant did not produce a single witness to back him up on his claim of innocence. If he had not been guilty, he could have gotten somebody to testify for him.' The defendant in his statement to the jury said, 'Everyone that knows me knows that I would not do a thing like that . . . I have worked for Mr. Collier about three years. . . he knows I would not do a thing like that. I worked at Davison-

Paxon's, and the manager up there knows me. He can give an account of me.'" The statement made by the solicitor does not appear to me to be sufficient to require a reversal in view of testimony of several other witnesses that the defendant was engaged in the lottery game, and this is particularly true in view of the instructions of the court to the jury, whereby the jury were requested to disregard the solicitor's remarks. This assignment is not meritorious.

Paragraph 4 subparagraph (e) assigns error because it is alleged that the court erred in refusing to grant a mistrial because of certain testimony of the defendant regarding a conversation with an investigator when the defendant's participation in the lottery game was under consideration. The investigator testified that the defendant came to him and discussed the charges against the defendant regarding the defendant's participation in the lottery game and in the course of the conversation the investigator asked the defendant how he had put up bond money for lottery workers if he, the defendant, was not connected with the operation of the lottery game also, that it looked as if many of the defendant's friends were connected with operating the lottery game. The investigator said that the defendant told him that the solicitor's office was about to put "fifteen thousand people out of work if you break up the lottery" and that the defendant then just "went all to pieces." After reading all the evidence on this point I cannot see that this conversation is of major importance and that any discussion of it by the court did not harm the defendant. Of course, the court had no right to clarify the evidence, and he did not do so. This assignment of error is not meritorious.

Paragraph 4 subparagraph (f) assigns error because it is alleged that the court erred in failing to give in charge the essential ingredients necessary to constitute the offense of operating a lottery, after the court was requested in writing to so charge. When I read the charge of the court as a whole, it seems to me that the charge covered every necessary phase of the case, in view of the pleadings and the evidence before the court. This assignment is not meritorious.

Paragraph 4 subparagraph (g) assigns error in that it is al-

leged that the defendant should not have been charged in nine separate counts with the operation of a lottery; that such offense, even if done on separate days, is of a continuous nature and that the trial judge was without authority to sentence the defendant for nine consecutive twelve-month sentences for operating the lottery but that the operation of the lottery was one offense only. In *Martin* v. *State*, 73 *Ga. App.* 573, supra, this court went extensively into the question of operating a lottery on different dates and ruled that such operation on different dates constituted an offense for every date named in a count of an indictment. In *Smith* v. *State*, 74 *Ga. App.* 777, supra, the court again considered carefully the same state of facts in this respect and again ruled that such constituted separate offenses. The facts in this respect in each of those cases are almost on all fours with the facts of the case at bar and are authority for affirmance of the instant case. I have the same opinion now as is reflected in those cases. I think the law set forth in the many cases previously before this court was good then and is good now, particularly in view of the many cases of the Supreme Court cited and/or discussed hereinbefore. The court did not err in sentencing the defendant in the instant case to serve a consecutive sentence on each count on which he was convicted.

It is my opinion that the court did not err in any of the rulings, except in one particular and that is this: The evidence in the *instant case* does not show that on any specific day bets which were taken, recorded and turned in to the defendant by the witnesses were bets as to the outcome of market reports on that same day.

It is my opinion that in the trial of a case of lottery on a multiplicity of counts alleging and involving different dates, unless the State proves the date of the drawing for each day alleged in each count of the indictment, the evidence will not show a completed crime for each day shown in the indictment.

I have made this special concurrence somewhat lengthy because I felt that it was necessary to show that the instant case brings up one point (covered in the two paragraphs immediately hereinabove) which has never been brought up before and that one thing makes this case different from all other cases herein-

before decided by the appellate courts on this subject. For this reason and this reason alone, I am specially concurring and not dissenting in the instant case.