James **CRECELIUS**, Appellant,

v.

**COMMONWEALTH** of Kentucky,
Appellee.

Court of Appeals of Kentucky.

Oct. 26, 1973.

**90**

Bruce D. Prizant, Louisville, Gilbert H. Deitch, Atlanta, Ga., Robert Eugene Smith, Baltimore, Md., for appellant.

Ed W. Hancock, Atty. Gen., Robert Willmott, Jr., Asst. Atty. Gen., Frankfort, Frank Coryell, Asst. Commonwealth Atty., Louisville, for appellee.

Irvin D. Foley, Louisville, for Louisville Division of Police.

REED, Justice.

James Crecelius appeals from an order of a circuit judge of the criminal branch of the Jefferson Circuit Court. The order adjudged that appellant was in contempt of court because he had failed to produce for the judge's inspection, as directed by a prior order, a film, which a city police officer had alleged was obscene; the punishment assessed was 90 days' confinement in jail. Appellant prosecuted an appeal to this court. He was granted bail pending the disposition of his appeal. We feel compelled to reverse the order from which the appeal is prosecuted for the reasons later stated in this opinion.

Late in the morning of February 6, 1973, a city police detective purchased a ticket and entered a theater in Louisville, Kentucky, operated by an enterprise called the Riverview Follies Fun Center. He viewed three separate motion picture films until the early afternoon. As he left the theater, he identified himself as a police officer to an employee and asked for the manager. The employee replied that the manager was not there. The detective soon thereafter applied to a circuit judge of the criminal branch of the circuit court for a search warrant. His application was denominated "complaint-affidavit." In this properly verified application, the detective identified two of the films that he had viewed as obscene matter being exhibited in violation of the state obscenity laws (KRS Chapter 436). The affidavit was specific in that it alleged that the two identified films displayed numerous acts of sexual intercourse, penetration, oral genital perversion and other sexual acts. The application concluded with a prayer that a warrant be issued authorizing a search for and a seizure of the two films at the described premises.

About 3:00 p. m. on February 6, 1973, the circuit judge issued an order directed to appellant as manager of the Riverview Follies Fun Center in response to the detective's application for the issuance of a warrant to search for and seize the two films. This comprehensive order directed appellant and any other person concerned with the display of the films who received notice, to safely keep the films, prevent alteration of them, and deliver them together with a projector for their viewing to the judge for a hearing at 3:00 p. m. on the next afternoon, February 7, 1973. The order recited that the purpose of the view of the films and the hearing was to determine "why a search warrant should not issue"; a further recitation in the order also provided that subsequent to any seizure appellant could obtain an immediate hearing to determine the issue of obscenity upon his timely request. The order concluded with a direction to appellant to safely keep the films until such time "as a search warrant has been executed or request therefor denied."

Armed with this order, the detective returned to the theater at 4:00 p. m. on the

same day that he had viewed the films. He served the order on appellant. Appellant thereupon advised the officer that the films shown at the theater always changed on Wednesdays, the day the order was served, and that he was not in possession of the two films because they had been picked up about 3:00 p. m., approximately one hour before service of the order. At a later hearing, the detective stated that appellant also told him on this occasion that the films were still under his control and that he could secure their return.

Counsel for appellant promptly filed a motion to quash the order in which several grounds of invalidity were asserted. Finally, at a hearing on March 30, 1973, the judge rejected all defenses and the appellant then asserted a Fifth Amendment privilege and sought immunity, which both the prosecutor and the judge refused to extend. The judge found appellant in contempt for his failure to produce the films and sentenced him to 90 days in jail. Appellant's counsel sought a delay of service of the sentence for five days during which time they would attempt to secure the films from the distributor. The judge refused the delay in service of sentence. This appeal then resulted.

■ The appellant casts his argument in terms of a "running together" of the Fourth and Fifth Amendments to the Constitution of the United States. The Fourth Amendment is, however, primarily directed to the right of the people "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. . . ." "[W]herever an individual may harbor a reasonable 'expectation of privacy,' . . . he is entitled to be free from unreasonable governmental intrusion." Terry v. Ohio, 392 U.S. 1, p. 9, 88 S.Ct. 1868, p. 1873, 20 L.Ed.2d 889, p. 899 (1968). In the case at bar, the appellant does not own the films nor did he claim to keep them in a place where he expected privacy. He was exhibiting the films owned by another in a public theater. Any element is lacking that would demonstrate

an expectation of privacy. Hence, if the films fell into the same category as individual papers or records it would appear that production of them could be ordered under the circumstances of this case by a properly authorized subpoena so far as the usually understood requirements of the Fourth Amendment are concerned. See Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (decided January 9, 1973).

■ The opinion of the Supreme Court in Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (decided June 25, 1973), clearly approves the extension of the standard of reasonableness expressed in the Fourth Amendment to seizures of publicly exhibited motion picture films despite the lack of ownership of the film by the exhibitor and the lack of even a pretended expectation of privacy on his part. The result can only be rationalized on the basis that where First Amendment guarantees of freedom of expression are present, the standards of the Fourth Amendment are expanded to apply, not only despite lack of ownership of the thing seized, but also where no expectation of privacy is present. According to Roaden, not only does the Fourth Amendment standard of reasonableness apply, but the evaluation of its existence must be pursued with a stricter approach than is acceptable when non-First Amendment seizures are considered. Therefore, in the Roaden case the Supreme Court held that an officer could not validly seize the film then being exhibited in a commercial theater without a constitutionally sufficient warrant even though the seizure was incident to an arrest of the exhibitor for violation of the Kentucky obscenity laws (KRS 436.101).

On the same day Roaden was decided, the Supreme Court also decided Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745. In Heller, the circumstances of the seizure of an allegedly obscene film from a motion picture theater were considered. A criminal court judge viewed an exhibition of the film after he had pur-

chased a ticket. At the end of the film, the judge signed a search warrant for the seizure of the film and another warrant for the arrest of the manager and two employees of the theater. The film was immediately seized as authorized by the search warrant. The Supreme Court rejected the contention that an adversary hearing must be afforded prior to a temporary seizure of a publicly exhibited motion picture film effected under the authority of a constitutionally valid warrant to preserve the film as evidence, where a prompt judicial determination of the obscenity issue in an adversary proceeding is available at the request of any interested party. A further condition was attached: if the exhibitor shows that other copies of the film are not available to him, then the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding. The Supreme Court thereupon struck a balance that would facilitate the seizure of allegedly obscene material as evidence, but would minimize the effect of prior restraint on expression in a First Amendment context.

■ Roaden and Heller both establish that the Supreme Court is presently convinced that a warrant to seize as evidence an obscene film being exhibited to the public can be issued ex parte. A view of the film by a judge prior to the issuance of a warrant to search and seize is a permissible way to evaluate probable cause, but it is not the only procedure available. An affidavit by an officer who viewed the film may establish probable cause if it is explicit and specific and not conclusory.

■ Applying these principles to the case at bar, it is our opinion that the officer's affidavit was sufficiently specific and explicit to establish probable cause for the issuance of a warrant to search for and seize the two questioned films as evidence. Cf. Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (decided June 21, 1973). After the seizure, a prompt hearing on the issue of obscenity should be afforded to any interested party. In the meantime, the exhibitor should be permitted to copy the film if no other copy is available to him and should be permitted to continue to show the film at his own risk until the issue of obscenity is adjudicated. If the exhibitor fails to contest the issue of obscenity after reasonable opportunity to do so, then the existence of probable cause may be regarded as confessed so far as the validity of the seizure of the evidence is concerned.

■ There is no statutory authority that attempts to authorize the procedure adopted in this case. There is no rule of court in existence that attempts to sanction it. To compel the defendant to act as an agent for the detective in what amounts to a seizure of the film for the purpose of determining whether there was probable cause to issue a warrant to seize it as evidence, particularly where the defendant was not in possession of the film when the order to produce it was served, is a procedure that cannot stand as constitutionally permissible in the First Amendment context in which the case is presented. Any other conclusion would also unnecessarily implicate a serious Fifth Amendment issue. Cf. Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (decided January 9, 1973); United States v. Dionisio, 410 U.S. 1, 93 S.Ct. 764, 35 L.Ed.2d 67 (decided January 22, 1973).

The order appealed from is reversed and the defendant is discharged from the contempt adjudication.

All concur.