## 29011. DYKE v. THE STATE.

INGRAM, Justice.

We review in this case appellant's conviction in the Criminal Court of Fulton County on two counts of exhibiting obscene material in violation of Code Ann. § 26-2101. Categorically, the appeal deals with three areas of enumerated trial error: (1) the overruling of appellant's motion to dismiss the two-count accusation; (2) the sufficiency of the evidence; and (3) various rulings by the court during the trial, including the correctness of the jury instructions. Each of the alleged errors in these categories will be examined in this opinion.

The case arose as a result of a visit made on October 23, 1973, by a Fulton County investigator to the Festival Cinema Theatre in Atlanta to view a film entitled "Devil in Miss Jones." After purchasing a ticket and seeing the movie, the investigator presented an affidavit to a judge in Fulton County and obtained a warrant to search the theatre premises and seize the film. On the following day, the investigator returned to the theatre with two Atlanta policemen and after they viewed the film, the warrant was served and several employees of the theatre were arrested. Appellant was at a counter in the lobby and the

officers first asked him who was the manager of the theatre. Appellant replied that he was the manager and the investigator then identified himself and arrested appellant and two other employees. A commitment hearing was held on November 2, 1973, and as a result of that hearing appellant was bound over for trial. Three days later, the same investigator returned to the theatre and again viewed the same film being exhibited there. A second warrant was obtained on another affidavit by the investigator and a commitment hearing was waived on it. Thereafter, a two-count accusation was drawn charging appellant with exhibiting obscene material on these two separate dates and the case went to trial before a judge and jury. At the trial, the state presented oral evidence from the investigator, including testimony that appellant was present on each occasion when the film was shown. The state also exhibited the film to the jury. Appellant presented the testimony of a clinical psychologist regarding the nature of the film and its social value. After receiving instructions from the trial judge, the jury returned a verdict of "guilty" on both counts and appellant received a sentence of 12 months and a $1,000 fine on each count, to be served consecutively.

I.
Motion to Dismiss.

Appellant argues that Code Ann. § 26-2101, the obscenity statute under which he was convicted, is too vague and overly broad to withstand the constitutional attacks made on it in this case and that his conviction is a denial of due process of law. It is also argued that the accusation is fatally defective because it did not specify the requisite elements of the offense with which appellant was charged.

Appellant acknowledges the decision of this court in *Slaton v. Paris Adult Theatre I,* 231 Ga. 312 (201 SE2d 456) (decided October 30, 1973), but argues that the construction given the obscenity statute in that case is erroneous because the statute fails to give fair warning that criminal liability under it is dependent upon standards announced by the U. S. Supreme Court in

Miller[1] after the Georgia statute was written.

All of these well reasoned arguments were made on behalf of appellant in his counsel's brief filed in this court on June 30, 1974. Four days later, the U. S. Supreme Court decided the case of Hamling v. United States, 94 S. C. 2887 (41 LE2d 590) (1974), approving the application of a pre-Miller federal mailing statute to post-Miller defendants. Although the Miller obscenity standards were not spelled out in this federal statute, the court there rejected the same argument urged here by appellant and in doing so, stated: ". . . the language of Roth[2] was repeated in Miller, along with a description of the types of material which could constitutionally be proscribed and the adjuration that such statutory proscriptions be made explicit either by their own language or by judicial construction . . ." Id., p. 2906.

We pointed out in *Paris Adult Theatre I,* supra, "that the Georgia statutory definition [of obscenity] has been previously authoritatively construed by this court to include those standards for obscenity as permitted by Miller." 231 Ga. 312, 316. We also cited several case examples where this court has defined obscenity, within the meaning of this statute, in substantially the same descriptive language used by the Supreme Court in Miller. This list of case examples was not intended to be exhaustive, but merely to illustrate that obscenity under the Georgia statute had been previously construed in a manner consistent with the new Miller standards. Therefore, the public generally, including commercial exhibitors of films, had been given fair warning because the descriptive language used in Miller contained similar descriptions of obscene materials.

More importantly, all of appellant's constitutional arguments in this case must fail for the reason that on July 25, 1974, the U. S. Supreme Court denied certiorari in *Paris Adult Theatre I v. Slaton* after consideration by

---

[1] Miller v. California, 413 U. S. 15 (93 SC 2607, 37 LE2d 419) (1973).

[2] Roth v. United States, 354 U. S. 476 (77 SC 1304, 1 LE2d 1498) (1957).

the court of remarkably similar constitutional attacks made on the Georgia obscenity statute for vagueness and overbreadth, and also for alleged denial of due process resulting from this court's previous construction of the obscenity statute in the *Paris Adult Theatre* case. This removed the constitutional challenge to the present obscenity statute in Georgia and further discussion of these same issues would be pointless.

We turn next to appellant's contention that the accusation under which he was tried is fatally defective, as it failed to allege the requisite elements of the offense, i.e., the specific standards for judging obscenity set forth in Miller, supra. As noted by the Supreme Court in Hamling, supra, "the various component parts of the constitutional definition of obscenity need not be alleged in the [accusation] in order to establish its sufficiency . . ." 94 S. C. 2887, 2908. The language used in the present accusation described the offense in the language of the statute and contained the same construction approved by this court in *Paris Adult Theatre I,* supra. We cannot agree that it is defective as it adequately alleges the offense with which appellant was charged in each count. See Code Ann. § 27-701.

II.
Sufficiency of the Evidence.

Appellant contends that the evidence is insufficient to sustain a finding that the film is obscene and that the evidence fails to prove he had any control over the showing of the film or knowledge of its content.

Appellant argues that this film is not merely a "stag film," but is a full length film with a continuous story line, an attempt at innovative lighting, and that a moral can be gleaned from viewing it. Therefore, appellant asserts, the film is not "utterly without redeeming social value," one of the tests still required in Georgia to find obscenity. Appellant argues that the film has at least a modicum of social value since it goes beyond a mere "pretense," and appellant relies on United Artists v. Gladwell, 373 FSupp. 247 (S. D. Ohio, 1974), and United States v. Language of Love, 432 F2d 705 (2d Cir. 1970), to conclude that under the evidence in this case,

including the testimony of the clinical psychologist, this film is not obscene.

We are not bound to approve the jury's finding that this film is obscene, since it is clear the United States Supreme Court has determined that an independent appellate review must be made of the material to decide the constitutional fact of obscenity. Jenkins v. Georgia, 94 S. C. 2750 (41 LE2d 642) (June 24, 1974). See, also, United States v. Groner, 479 F2d 577 (5th Cir. 1973); and, Jacobellis v. Ohio, 378 U. S. 184 (84 SC 1676, 12 LE2d 793) (1964). We have discharged this constitutional duty by an en banc review of this film, "Devil in Miss Jones." Each member of this court concludes from viewing the film that it is rank, hard core pornography. The conduct of the film actors includes individual and group sexual acts of intercourse, fellatio, and cunnilingus. The film is primarily devoted to scenes depicting bizarre acts of both natural and aberrational sexual conduct that are not necessary to describe in further detail here. During these scenes, the camera focuses primarily upon the actors' genitals which are displayed in a lewd manner. The majority of the scenes depict sexual activity and they appear to exist solely for their own lewd and lascivious purpose and add no other discernible meaning to the film. The so-called plot which appellant urges is accomplished by the placing of a brief backdrop in the initial scene of the film which shows a woman committing suicide for which she is to be sent to hell. However, she is permitted to return to earth to lead a life consumed with lust while awaiting the devil's call to go to hell. This woman, who is "Miss Jones," then indulges in every conceivable sexual perversion which she can devise until her time on earth is ended. The rather brief opening scene is followed by the major portion of the film which is devoted to a variety of sexual experiences. In the final scene, Miss Jones is summoned by the devil and doomed to spend infinity with a deranged male completely uninterested in her voracious sexual appetite.

It is our view that an otherwise obscene film cannot be constitutionally salvaged by adding to it a vague moral which is superimposed on the predominant theme of the film which is an appeal to a prurient interest in sex. This

film, in the opinion of the court, is utterly without redeeming social value. It is barren of any effort to express an idea or serve even a questionable social purpose. We find, upon application of the standards set forth in *Paris Adult Theatre I v. Slaton,* supra, that the film, "Devil in Miss Jones," is obscene as a matter of constitutional law and fact.

Appellant further argues the evidence is legally insufficient to sustain his conviction for exhibition of this film because it failed to show he had control over the showing of the film or knowledge of its content. The evidence shows that the film was advertised on the marquee of the theatre managed by appellant and that the theatre was an "adult theatre." Appellant was shown to be on the premises when the film was exhibited on the two separate dates charged in the accusation and, on the second occasion, appellant sold tickets for admission to see it. This was sufficient to authorize the jury to conclude that on each occasion appellant at least aided and abetted in the exhibition of the film. See Code Ann. § 26-801. Appellant's reliance upon *Sokolic v. State,* 228 Ga. 788 (187 SE2d 822) (1972) is misplaced. The evidence there showed only that the defendant had made an application for a business license to operate a bookstore almost two years prior to the date of the alleged crime and failed to show that defendant had any connection with the store at the time he was charged with selling obscene material through the store.

We must also reject appellant's contention that the evidence failed to prove scienter or guilty knowledge by him of the nature of the film itself. Under Code Ann. § 26-2101, the applicable test for knowingly exhibiting obscene material is whether the defendant has "knowledge of facts which would put a reasonable and prudent man on notice as to the suspect nature of the material." The evidence need not show appellant actually knew the film was legally obscene. See, Rosen v. United States, 161 U. S. 29 (16 SC 434, 40 LE 606) (1896); United States v. Thevis, 484 F2d 1149 (3) (5th Cir. 1973); and Hamling v. United States, 94 S. C. 2887, supra. We believe the evidence presented by the state in this case was sufficient to authorize the jury to find beyond a

reasonable doubt that appellant was guilty of both counts of this accusation.

Appellant further urges that his constitutional right against self-incrimination was violated when the state was permitted to introduce into evidence appellant's statement that he was the manager of the theatre. Appellant's argument is that this statement was elicited by the state investigator without first giving the warning required by Miranda v. Arizona, 384 U. S. 436 (86 SC 1602, 16 LE2d 694, 10 ALR3d 174) (1966). We find no merit in this argument since, at the time of this question, appellant was not in custody and the criminal investigation had not focused upon him as an individual. Miranda was written to "protect the rights against self-incrimination of citizens taken into custody or otherwise restrained who are suspected or accused of crime." *Carnes v. State,* 115 Ga. App. 387, 391 (154 SE2d 781) (1969). Miranda simply does not apply to the inquiry made of appellant under the facts of this case. Therefore, appellant's statement was properly admitted into evidence by the trial court and could be used by the jury in reaching its verdict.

## III.
### Rulings by the Court.

Appellant strongly contends that the trial court erred in not suppressing as evidence the motion picture film seized twice by the state because the affidavits used to obtain the search warrants were legally insufficient. Appellant argues that in each instance the affiant merely recited what he considered to be "highlights" of the film to obtain search warrants without relating the entire text of the film to the judge who issued the warrants. Appellant further argues that affiant's subjective evaluation that the film was "hard core pornography" does not support the affidavit for constitutional purposes. Appellant primarily relies on the rule applied in Lee Art Theatre v. Virginia, 392 U. S. 636, 637 (88 SC 2103, 20 LE2d 1313) (1968), where it was observed that: "The procedure under which the warrant issued solely upon the conclusory assertions of the police officer without any inquiry by the justice of the peace into the factual basis for the officer's conclusions was not a procedure 'designed

to focus searchingly on the question of obscenity' [citing Marcus v. Search Warrant, 367 U. S. 717, 731 (81 SC 1708, 6 LE2d 1127)], and therefore fell short of constitutional requirements demanding necessary sensitivity to freedom of expression."

A review of the affidavits used to secure the two warrants issued in this case reveals factual descriptions of numerous representative scenes depicted in the film. These affidavits were sufficient to show probable cause for the issuance of the warrants. See, Heller v. New York, 413 U. S. 483 (93 SC 2789, 37 LE2d 745) (1973); and, Crecelius v. Commonwealth, 502 S. W. 2d 89 (Ky.) (1973).

We also note that a commitment hearing was held nine days after service of the first warrant and at that adversary hearing the committal judge determined from the evidence that probable cause existed to conclude there was a violation of the Georgia obscenity statute by appellant. Thereafter, appellant proceeded at his own risk to participate in the exhibition of another copy of the same film by selling admission tickets to the theatre. With regard to the seizure of the second copy of the film, we are aware of the implication of prior restraint. As stated in Heller v. New York, supra, p. 492, "On a showing to the trial court that other copies of the film are not available to the exhibitor, the court should permit the seized film to be copied so that showing can be continued pending a judicial determination of the obscenity issue in an adversary proceeding." In the present case, at the time of seizure of the second copy, there had been a judicial determination (of probable cause) in an adversary proceeding that the film was obscene. In addition, there has been no showing here that seizure of the second copy left the exhibitor without another copy to exhibit, nor is there any evidence that he made any request to copy the film. The Supreme Court, in Heller, was seeking to strike a balance between the facilitation of seizing allegedly obscene material as evidence while minimizing the effect of prior restraint of possible First Amendment rights. See, Crecelius v. Commonwealth, 502 S. W. 2d 89, supra, p. 92.

We conclude that the search and seizure in this case were not invalid for any reason urged by appellant.

Appellant also argues that he was denied a fair trial by the trial court's interference with the presentation of the defense in the case, and by other conduct which demonstrated prejudice against appellant during the trial of the case. A review of the record does reveal a good deal of conflict between the court and counsel during the trial but it fails to show prejudice against appellant. Most of it occurred in an effort by the court to require counsel in the case, both for the state and the defendant, to present properly to the jury admissible evidence on the correct legal issues to be decided in the case. It is the duty of the trial court to control the trial of the case and to insure a fair trial to both sides on the disputed issues in the case. Sometimes this requires interference by the court with the conduct of counsel or with a witness in the trial. The trial judge has broad discretion in handling these matters and we are loath to interfere with that discretion unless it is manifestly abused by clearly demonstrated prejudice or unfairness. While another trial judge may not have conducted the trial of this case in the same way as this trial judge did, we do not agree the trial court interfered so as to deprive the appellant of a fair trial. See, *Carr v. State,* 76 Ga. 592, 593 (2c) (1885), and *Wilson v. State,* 229 Ga. 224 (2) (190 SE2d 78) (1972).

It is also urged in this appeal that the trial court improperly instructed the jury on the law in the case and the conviction must be reversed because of it. Appellant argues that the jury was prevented from intelligently passing upon the issues in the case because the trial court gave instructions on the law to the jury four times during the trial and that each instruction was different. Appellant also contends that parts of the instructions were argumentative and incomplete.

It is well settled by case law that the charge of the court must be taken in its entirety when considering its impact upon the jurors. See, *Cooper v. State,* 212 Ga. 367 (92 SE2d 864); and *Fox v. Burns,* 142 Ga. 119 (2) (82 SE 521) (1914). The record shows the trial judge was concerned during the trial of the case that the jury know the essential elements of the crime with which appellant was charged in order to understand the evidence being introduced on the issues in the case. In attempting to

clarify for the jury the involved legal questions they had to consider, the trial judge did instruct the jury several times during the trial. Although the language in each instruction was not identical, when taken as a whole the jury was clearly informed of the correct applicable law as it related to the question of obscenity and the responsibility of the jury in the case. The instructions given by the trial judge are supported by the decision of this court in *Slaton v. Paris Adult Theatre I,* supra, and the trial court was careful to instruct the jury that it was not emphasizing any part of the instructions by repetition. Under the circumstances of this case, we find no reversible error arising from the repetition of instructions given by the trial court.

Appellant also urges that in explaining the community standard portion of the obscenity statute, the trial judge improperly used confusing and argumentative language. Excerpts from the language complained of in the charges are as follows: ". . . the community of Georgia, as evolved from generation to generation along with our civilization . . . by general consensus of the community of Georgia as a whole, would be offensive to the common instincts of decency of people generally . . ." Subsequent to the trial of this case, the United States Supreme Court in Hamling, supra, approved the use of similar language in the following charge: "The trial court instructed the jury that it was to judge the obscenity vel non of the brochure by reference to 'what is reasonably accepted according to the contemporary standards of the community as a whole, . . . This phrase means, as it has been aptly stated, the average conscience of the time, and the present critical point in the compromise between candor and shame, at which the community may have arrived here and now.' " 94 S. C. 2887, 2900. We conclude the trial court's instruction in the present case was not error.

Finally, we note the trial court clearly pointed out to the jury that all elements of the definition of obscenity "must coalesce and co-exist." We believe this instruction served to cure any error in the court's use of the disjunctive "or," rather than the conjunctive "and" in the parts of the charge complained of by appellant. Appellant

also argues that the failure of the trial judge to define the words, "shameful or morbid," as requested by appellant at the trial, prevented the jury from intelligently passing upon the appellant's guilt and denied appellant a fair trial. We agree with the appellee that these words used in the statute to define a prurient interest in sex are not words of art but rather are words of common understanding and meaning which require no definition themselves for understanding by the jury.

Therefore, we conclude that the instructions of the trial court, when considered in their entirety, were correct and did not deprive appellant of a fair trial.

Appellant further claims a denial of his double jeopardy rights under the State (Code Ann. § 2-108) and Federal (Fifth Amendment) Constitutions in that he was convicted and sentenced for two crimes when there was but one single transaction in this case. Appellant cites Code Ann. § 26-506 (multiple prosecutions for same conduct) to contend here there was but one course of conduct and that if a crime has been committed, he can be punished only once for it. Appellant argues that the accusation charged him in two counts of violating the same statute and that the proof involved a regularly scheduled showing of a motion picture in a theatre with no disruption of scheduling. The exhibition of the film on two separate dates, appellant argues, does not permit the state to "pyramid" the charges and punishment against him. Appellant relies primarily upon the cases of *Phillips v. State,* 99 Ga. App. 424 (108 SE2d 721) (1959), and *Estes v. State,* 98 Ga. App. 521 (106 SE2d 405) (1958). Those cases each dealt with lotteries where defendants had sold chances to different people on separate dates for a prize. However, in neither case did the evidence show each transaction involved a different lottery. That is, the evidence did not show that there was more than one drawing and prize so it was held that even though several tickets were sold to different people, they were all for the same lottery and this constituted a single crime.

The facts of the present case are distinguishable from *Phillips* and *Estes.* Code Ann. § 26-2101 states that, "A person commits the offense of distributing obscene materials when he . . . exhibits or otherwise disseminates

to any person any obscene material . . ." Unlike the multifaceted lottery, a separate offense occurred each time the obscene film was exhibited. Under the rationale of *Phillips* and *Estes,* perhaps it could logically be argued that if appellant sold tickets to see the film on different dates, but had exhibited the movie only once, there would be only a single crime, but that is not the case here. There were two distinct episodes involving different dates of exhibition and even different copies of the same film. This record shows two criminal violations, not a single crime.

This court agrees that First Amendment rights deserve strong protection, e.g., *Sanders v. State of Georgia,* 231 Ga. 608 (203 SE2d 153) (1974). However, in this case appellant was put on notice, at the commitment hearing, that probable cause existed to believe that this film, "Devil in Miss Jones," was not within the realm of protected expression. In the face of this judicial finding of probable cause for violating Code Ann. § 26-2101, appellant returned to the theatre and commenced to participate in the exhibition of a second copy of the same film. This was done at his own risk and appellant will not now be heard to claim double jeopardy as a bar to his conviction for the second offense. See Crecelius v. Commonwealth, supra.

*Judgment affirmed. All the Justices concur.*

ARGUED JULY 9, 1974 — DECIDED SEPTEMBER 24, 1974.

*Gilbert H. Deitch, Robert Eugene Smith,* for appellant.

*Hinson McAuliffe, Solicitor, Thomas R. Moran, Jr., Assistant Solicitor,* for appellee.